**John Jay DAVIS, Jr., Appellant,**

**v.**

**The STATE of Texas, Appellee.**

No. 03–98–00221–CR.

Court of Appeals of Texas,
Austin.

March 25, 1999.

Ray Bass, Law Offices of Bass & Smith, P.C., Austin, for appellant.

Eugene D. Taylor, County Atty., Brandy Byrd, Asst. County Atty., Williamson County, Georgetown, for State.

Before Justices JONES, PATTERSON and ONION *

JOHN F. ONION, Jr., Justice (Assigned).

This is an appeal from an order deferring adjudication of guilt and placing appellant John Jay Davis, Jr. on community supervision. *See* Tex.Code Crim. Proc. Ann. art. 44.01(j) (West Supp.1999); *Dillehey v. State,* 815 S.W.2d 623, 626 (Tex.Crim.App.1991)

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

(defendant who receives deferred adjudication probation may appeal from ruling on pretrial motion).

Appellant entered a plea of nolo contendere before the trial court to an information charging him with the misdemeanor offense of possession of fenfluramine in an amount of less than 28 grams. *See* Tex. Health & Safety Code Ann. § 481.117(a)(h) (West Supp.1999). The court rendered an order deferring adjudication of guilt and placing appellant on community supervision for 24 months subject to certain conditions.

## Point of Error

In a single point of error, appellant contends that the trial court erred by denying his pretrial motion to suppress evidence obtained by an illegal warrantless detention and arrest. Appellant claims that the initial detention of the vehicle in which he was a passenger violated the Fourth Amendment to the United States Constitution applicable to the states by virtue of the Fourteenth Amendment. *See Mapp v. Ohio*, 367 U.S. 643, 655–56, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Appellant presents only a federal question. We will sustain the point of error and reverse the judgment of conviction.

## Facts

The record at the suppression hearing reflects that Georgetown Police Officer Timothy Allen Stengle was on patrol on March 3, 1996, about 6:00 p.m. on Highway 29 when he received a dispatch. Stengle testified that the dispatcher reported having received information from a caller on a "cell phone" about a full-sized black Chevy Blazer with dealer's tags 5D1180 in the area of mile post 259 on I–35 driving in a northbound direction; that the vehicle was occupied by three white males; that the vehicle was being driven recklessly—"that the vehicle has passed the caller on the shoulder of the roadway back in Round Rock"; and that the occupants were "possibly smoking marijuana."

Stengle proceeded to I–35 and pulled off to the side of the road between mile posts 261 and 262. He then received a radio report from Officer Pitcher that a black Blazer was headed northbound on I–35 in the direction of Stengle's position. As a full-sized black Blazer with three white males passed Stengle's position, he began to follow and confirmed the dealer tag number as given by the dispatcher. Using his police unit's overhead lights, Stengle pulled the Blazer over north of Williams Drive at mile post 263 on I–35.

Stengle acknowledged that he observed no traffic offense being committed and saw no violation of law; he stopped the Blazer solely on the basis of the information in the dispatch. He did not know the anonymous caller and had never seen or talked to such person. The unknown informant had not given a name or address, although it was the policy of the Georgetown Police Department to ask for identification. Office Stengle acknowledged that no one stopped at the scene of the detention and identified himself or herself as the caller.

Stengle testified that after the Blazer stopped, the driver got out and came to the rear of the vehicle to meet the officer. The driver was ordered to return to the vehicle and get back inside. Stengle explained that this was a policy he followed with traffic stops. After the driver complied with the officer's instruction, Stengle approached the driver's window and smelled the overwhelming odor of marihuana.[1] About this time, Officer Pitcher arrived on the scene. Stengle removed the driver, who was identified as Bryon Harlan, from the car. Officer Pitcher then removed appellant who was the right front seat passenger. A pat-down search of appellant revealed a pipe in one of his socks that the officers considered to be narcotic paraphernalia. Eric Bugen was removed from the back seat. A search of the back seat revealed marihuana on top of a black bag under a shirt and boxer shorts. The marihuana was believed to belong to Bugen. In the luggage storage area, a shaving kit was found that contained cocaine, narcotic

---

1. The statutory spelling of the substance is "marihuana." *See* Tex. Health & Safety Code Ann. § 481.002(26) (West 1992) & §§ 481.120, 481.121, 481.122 (West Supp.1999). The common spelling of the word is "marijuana" which is frequently used in trial court records.

paraphernalia, and a razor blade. Harlan admitted the cocaine was his. At the jail, two pills were found in appellant's left pocket. These pills form the basis of the instant prosecution.

Officer Frederick Pitcher testified that on the date in question he was a Georgetown police officer; that about 6:00 p.m., he heard the dispatch which referred to the caller as a female; and that the dispatch said the caller believed that they (three while males) "were smoking something referred to as marijuana." Pitcher revealed that he then drove south on I–35 and about a minute later observed a black Blazer northbound on I–35. He then radioed Officer Stengle of his observation. Officer Pitcher related that the dispatch referred only to a female caller. No name, age, or location of the caller was given.

The two officers were the only witnesses at the suppression hearing. The dispatcher did not testify and there was no evidence as to whether a tape had been made of the cellular phone call or whether any efforts had been made to locate the caller.

At the conclusion of the hearing, the trial court overruled the motion to suppress evidence obtained as a result of an illegal detention. The trial court made no separate findings of fact.

### Standard of Review

■ In reviewing a trial court's ruling on a motion to suppress evidence, an appellate court must determine the applicable standard of review. *See Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App.1997). *Guzman* has recently clarified the standard of review to be used. In *Loserth v. State*, 963 S.W.2d 770, 771 (Tex.Crim.App.1998), the court

2. In *Ornelas*, the Supreme Court stated that "the legal rules for probable cause and reasonable suspicion acquire content through application. Independent review is therefore necessary if appellate courts are to maintain control of, and to clarify the legal principles." *Ornelas*, 517 U.S. at 697, 116 S.Ct. 1657.

3. Police officers do not violate the Fourth Amendment by merely approaching an individual in public to ask questions. *See Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). This encounter does not require any justification whatsoever on the part of any officer. *See United States v. Mendenhall*,

made clear that *Guzman* is to be applied to all motions to suppress evidence. Although great weight should be given to the inferences drawn by trial judges and law enforcement officers, determination of reasonable suspicion and probable cause should be reviewed de novo on appeal. *See Guzman*, 955 S.W.2d at 87 (citing *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996));[2] *Hunter v. State*, 955 S.W.2d 102, 105 (Tex.Crim.App.1997) (question of whether defendant was "detained" under Fourth Amendment is to be reviewed de novo); *State v. Ensley*, 976 S.W.2d 272, 274–75 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd).

### The Applicable Law—Reasonable Suspicion

■ *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) recognized three categories of police-civilian interaction: (1) encounter;[3] (2) temporary detention or stop; and (3) arrest.[4] *See also State v. Simmang*, 945 S.W.2d 219, 222–23 (Tex.App.— San Antonio 1997, no pet.); *Francis v. State*, 896 S.W.2d 406, 408–09 (Tex.App.—Houston [1st Dist.] 1995), *pet. dism'd improvidently granted*, 922 S.W.2d 176 (Tex.Crim.App. 1996). Only detentions and arrests amount to "seizures" of persons. *See Terry*, 392 U.S. at 19, 88 S.Ct. 1868.

■ In the instant case, we are confronted with a detention or stop arising out of an anonymous tip. Law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *See Terry*, 392 U.S. at 22, 88 S.Ct. 1868; *Garza v. State*, 771

446 U.S. 544, 555, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

4. An arrest must be justified by probable cause to believe the suspect has committed an offense. *See Henry v. United States*, 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *Amores v. State*, 816 S.W.2d 407, 416 (Tex.Crim.App.1991). Probable cause is defined in *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Amores*, 816 S.W.2d at 411; *State v. Simmang*, 945 S.W.2d 219, 223 n. 4 (Tex.App.—San Antonio 1997, no pet.).

S.W.2d 549, 558 (Tex.Crim.App.1989). To justify the intrusion, the officer must have specific articulable facts which, in light of his experience and personal knowledge, together with inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen detained for further investigation. *See Comer v. State,* 754 S.W.2d 656, 657 (Tex.Crim.App.1986); *Johnson v. State,* 658 S.W.2d 623, 626 (Tex.Crim.App.1983); *Simmang,* 945 S.W.2d at 222. These "specific articulable facts" must create in the individual officer's mind a reasonable suspicion that "some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime." *Johnson,* 658 S.W.2d at 626. Thus, such a detention requires the officer to have a reasonable suspicion that the person detained is involved in criminal activity. *See Royer,* 460 U.S. at 497, 103 S.Ct. 1319; *Harris v. State,* 913 S.W.2d 706, 708 (Tex.App.—Texarkana 1995, no pet.). The officer making a *Terry* stop must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. *See United States v. Sokolow* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Williams v. State,* 621 S.W.2d 609, 612 (Tex.Crim.App.1981).

■ The reasonableness of an investigative detention turns on the totality of the circumstances in each case. *See Mendenhall,* 446 U.S. at 561, 100 S.Ct. 1870 (Powell, concurring); *Shaffer v. State,* 562 S.W.2d 853, 855 (Tex.Crim.App.1978); *State v. Sailo,* 910 S.W.2d 184, 188 (Tex.App.—Fort Worth 1995, pet. ref'd); *Davis v. State,* 794 S.W.2d 123, 125 (Tex.App.—Austin 1990, pet. ref'd). Reasonable suspicion is dependent upon both the content of the information possessed by the police and its degree of reliability. *See Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). "Both

factors—quantity and quality—are considered in the totality of the circumstances—the whole picture ... must be taken into account when evaluating whether there is reasonable suspicion." *Id.* (citing *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).

■ We observe that the "as consistent with innocent activity as with criminal activity" construct is no longer a viable test in determining reasonable suspicion for temporary detention. *See Woods v. State,* 956 S.W.2d 33, 38 (Tex.Crim.App.1997) (overruling a number of earlier cases).

■ An anonymous tip usually will justify the *initiation* of a police investigation. *See Clemons v. State,* 605 S.W.2d 567, 570 (Tex.Crim.App.1980); *Mann v. State,* 525 S.W.2d 174, 176 (Tex.Crim.App.1975); *Simmang,* 945 S.W.2d at 223. However, an anonymous tip or telephone call alone rarely will establish the requisite level of suspicion necessary to justify an investigative detention. *See White,* 496 U.S. at 329, 110 S.Ct. 2412;[5] *Reynolds v. State,* 962 S.W.2d 307, 311 (Tex.App.—Amarillo 1998, pet. ref'd); *Parish v. State,* 939 S.W.2d 201, 203 (Tex. App.—Austin 1997, no pet.). Normally, there must be some further indicia of reliability—additional facts from which a police officer may reasonably conclude that the tip is reliable and a detention is justified. *See White,* 496 U.S. at 329, 110 S.Ct. 2412; *Davis,* 794 S.W.2d at 125. To justify a police officer's conclusion that a crime has been or is being committed, the officer generally cannot rely alone on a police broadcast of an anonymous phone call to establish probable cause or reasonable suspicion. *Cf. Wright v. State,* 932 S.W.2d 572, 576 (Tex.App.—Tyler 1995, no pet.) (citing *Rojas v. State,* 797 S.W.2d 41, 44 (Tex.Crim.App.1990);and *Colston v. State,* 511 S.W.2d 10, 12 (Tex.Crim. App.1974)).

5. The Supreme Court in *White,* 496 U.S. at 329, 110 S.Ct. 2412, wrote:

 The opinion in *[Illinois v.] Gates[,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)] recognized that an anonymous *tip* alone seldom demonstrates the informant's basis of knowledge or veracity inasmuch as ordinary citizens generally do not provide extensive rec-

itations of the basis of their everyday observations and given that the veracity of persons supplying anonymous tips is "by hypothesis largely unknown, and unknowable." *Id.* at 237, 103 S.Ct. 2317, 76 L.Ed.2d 527. This is not to say that an anonymous caller could never provide the reasonable suspicion necessary for a *Terry* stop.

When an investigative detention is based solely on an anonymous tip, the court often has no way of evaluating the reliability of the information from the anonymous source. See Ebarb v. State, 598 S.W.2d 842, 844–45 (Tex.Crim.App.1980); Davis, 794 S.W.2d at 125. If an anonymous tip has a low degree of reliability, more information will be required to establish the requisite level of suspicion to justify an investigative detention. See White, 496 U.S. at 330, 110 S.Ct. 2412. An anonymous tip may, however, be sufficient if it contains sufficient "indicia of reliability" or if some aspects of it are sufficiently corroborated. Id. at 329–32, 110 S.Ct. 2412.

An officer's prior knowledge, his experience, and his corroboration of the details of the tip may be considered in giving the anonymous tip the weight it deserves. Id. at 329–30, 110 S.Ct. 2412. Mere corroboration of details, however, that are easily obtainable at the time the information is provided will not support a finding of probable cause nor furnish the basis for reasonable suspicion. See Gates, 462 U.S. at 245, 103 S.Ct. 2317.

In Glenn v. State, 967 S.W.2d 467, 470 (Tex.App.—Amarillo 1998, pet. granted), the court found that "the following are significant in determining whether reasonable suspicion exists for a temporary detention based upon information from an unknown tipster: (1) accurately predicting future behavior of third parties, id.; (2) corroboration of a detail linking the accused to the stated criminal activity, Ramirez v. State, 658 S.W.2d 808 (Tex. App.—Corpus Christi 1983), aff'd, 672 S.W.2d 480 (Tex.Cr.App.1984); and (3) a particularized and objective reason to suspect the accused. Davis v. State, 829 S.W.2d 218, 221 (Tex.Cr.App.1992)."

### Anonymous Tip—Instant Case

The tip in the instant case was by an unidentified female caller of unknown veracity. The anonymous tip did give a description of the vehicle and its dealer's tag number but gave no description of the offending individual or individuals as to age, physical appearance, or clothing. They were described as "three white males" which would fit a large segment of the population. The tip placed the black Blazer at milepost 259 on I–35, and within one or two minutes after receiving the dispatch, Officer Pitcher observed a black Blazer near mile post 260 and Officer Stengle observed the described vehicle with three white males between mileposts 261 and 262 on I–35. When Officer Stengle stopped the Blazer, he corroborated the tip as to the vehicle's description, the "white male" occupants, and that the vehicle was in the general vicinity. The mere corroboration of facts that are easily obtainable at the time the information is provided, however, will not furnish reasonable suspicion as a basis for a stop. Anyone with enough knowledge about a given person to make him the target of a prank, or to harbor a grudge against him, will certainly be able to formulate an anonymous tip hoping to initiate an investigation and perhaps a forcible stop or detention. This was the concern expressed by Justice Stevens. See White, 496 U.S. at 333, 110 S.Ct. 2412 (Steven, J. dissenting).

Although there was corroboration of the easily obtainable facts, was there corroboration of the details linking appellant and his companions to the stated criminal activity? The unknown caller did relate that the Blazer was being driven "recklessly" as it had passed the caller on the shoulder of the roadway "back in Round Rock." These facts within the tip would indicate personal knowledge of the tipster, but leaves vague the time, the location of the roadway in Round Rock, whether the tipster was in a vehicle, and other circumstances supporting the stated conclusion of "reckless driving." [6] The tipster also stated that the occupants of the Blazer were "possibly smoking marijuana." If this statement was based on personal observations rather than some other source, the tipster did not indicate how she was able to make this determination. The use of "possibly" indicated her uncertainty.

Giving the anonymous tip a common sense reading and considering it in the most favorable light, we do not find any corroboration of details linking appellant and his compan-

6. See Tex. Transp. Code Ann. § 545.401 (West 1999).

ions to the criminal activity alleged. Officer Stengle stated that his stop of the Blazer and its occupants was based solely upon the anonymous tip. At the time of the stop, he observed no traffic offense being committed nor any violation of law. There was nothing to link the occupants to the criminal activity reported.

An inadequate anonymous tip may be supported by an officer's prior knowledge and experience. Officer Stengle was an experienced officer, but he did not state that he was familiar with appellant, his companions, or the vehicle. Stengle did not testify that he was aware of any criminal records, concerning the occupants of the Blazer, or that the location was a high crime area, or where narcotics users are frequently found, or where drivers usually engaged in reckless driving. Nothing in Officer Stengle's or Officer Pitcher's experience and knowledge aided the corroboration of the anonymous tip.

### Conclusion

Under the totality of the circumstances, the anonymous tip, uncorroborated as to its significant aspects by independent police work, did not exhibit sufficient indicia of reliability to justify the investigative stop of the vehicle in which appellant was a passenger. The evidence appellant sought to suppress was the fruit of the unlawful detention. *See Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Giving almost total deference to the fact findings of the trial court but reviewing de novo the legal determination of reasonable suspicion as we are required to do, *see Guzman*, 955 S.W.2d at 87, we conclude that the trial court erred in overruling the motion to suppress evidence. Appellant's sole point of error is sustained.

The judgment of conviction is reversed and the cause is remanded to the trial court.