# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00106-CR

**Misty Michelle White, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT NO. 0985588, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

A jury found appellant Misty Michelle White guilty of possessing between four and two hundred grams of cocaine within a thousand feet of a school, and assessed punishment at imprisonment for seven years and a $10,000 fine. *See* Tex. Health & Safety Code Ann. §§ 481.115(a), (d); .134(c) (West Supp. 2001). Appellant's only point of error is that her motion to suppress evidence should have been granted. We will overrule this contention and affirm the conviction.

The ruling on a motion to suppress evidence presents a mixed question of law and fact. We defer to the district court's factual determinations but review de novo the court's application of the law to the facts. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

Austin police officer Kenneth Koch was dispatched to the intersection of Chico and Estes Streets at about 11:20 p.m. on the night in question. The officer was told that two black males, both approximately twenty-one years old, were selling narcotics at that location. One of the suspects

was said to be wearing a white T-shirt and blue jeans, while the other was wearing a red T-shirt and blue jeans. The intersection was within Koch's regular patrol area, and he was particularly familiar with it because an elementary school was on one corner. The officer described the location as a "high-narcotics trafficking area."

When Officer Koch arrived at the intersection, he saw a black male wearing a white T-shirt sitting in the driver's seat of a parked automobile. Koch recognized this man as Wil Foley, a drug dealer the officer had arrested on other occasions. A woman later identified as appellant was sitting with Foley in the front passenger seat. A black male wearing a red T-shirt was standing with two other men beside the car. Foley and the man in the red shirt both appeared to be twenty-one years old.

Koch parked his patrol car and walked toward the suspect vehicle. He noticed appellant "started leaning forward and downward but trying to keep her head up . . . making some kind of furtive movements down by her feet." Meanwhile, Foley had gotten out of the car. Koch ordered everyone to stay where they were and waited for a backup officer to arrive.

Officer Jeff Domel arrived a few minutes later. He and Koch then conducted protective frisks of the four men. As they did this, appellant began walking toward the house at 1121 Estes. She did not respond to Koch's order to return, so he pursued her and walked her back to the suspect car. Koch noticed that appellant "started tugging on her shorts as we were walking back, which made me suspicious, make me think she was hiding narcotics in the crotch area, which is pretty common." Officer Koch took appellant aside and told her that a female officer was on the way to

2

frisk her, and that if she had any illegal substances she should tell him before the female officer arrived. Appellant told the officer, "I don't have anything."

A third officer, Gregory White, arrived and was told to watch appellant while Koch examined the suspect car. At this time, the officers were also attempting to identify all the persons at the scene and running warrant checks. White noticed that appellant "had a real nervous look on her face [and] she kept looking around as if trying to find an avenue of escape." Suddenly, appellant seized her purse and began to run toward the house at 1121 Estes. As she ran, she reached inside the purse. White and another officer ran after appellant, following her as she ran onto the porch and kicked in the front door of the house. White grabbed appellant, and they both fell forward onto the floor. As they fell, two cookies of crack cocaine fell out of appellant's purse. More crack cocaine fell from appellant's hand as the officers removed her from the house.

Appellant contends that Officer Koch did not have a legal basis for initially detaining her. Alternatively, she argues that if her initial detention was justified, the detention unlawfully continued after that justification ended.

A police officer may stop and briefly detain a person for investigative purposes if the officer, in light of his experience, has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). A temporary detention is justified when the detaining officer has specific articulable facts, which taken together with rational inferences from those facts, lead him to conclude that the person detained is, has been, or soon will be engaged in criminal

3

activity. *Id.* A reasonable suspicion means more than a mere hunch or suspicion. *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). A detention is not permissible unless the circumstances objectively support a reasonable suspicion of criminal activity. *Id.*

An anonymous tip or telephone call may justify the initiation of an investigation, but it alone will rarely establish the level of suspicion required to justify a detention. *Alabama v. White*, 496 U.S. 325, 329 (1990); *Davis v. State*, 989 S.W.2d 859, 863 (Tex. App.—Austin 1999, pet. ref'd). Normally, a police officer must have additional facts before the officer may reasonably conclude that the tip is reliable and an investigatory detention is justified. *Davis*, 989 S.W.2d at 863. An officer's prior knowledge and experience, and his corroboration of the details of the tip, may be considered in giving the anonymous tip the weight it deserves. *Id.* at 864.

Officer Koch received an anonymous tip that two men were selling drugs late at night at a location known to the officer as a narcotics-trafficking area. Upon arrival at the scene, the officer found several individuals, two of whom matched the descriptions he had been given. One of these men, Foley, was a known drug dealer. Appellant was sitting in a car with Foley, and made furtive gestures as Koch approached. We hold that the tip, the officer's observations, the officer's prior knowledge, and the surrounding circumstances gave Koch a reasonable basis for suspecting criminal activity and to detain appellant and the four men for further investigation. The opinion on which appellant relies, *Comer v. State*, 754 S.W.2d 656 (Tex. Crim. App. 1986), is factually distinguishable.

An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 500 (1983). It is not clear how long appellant had been detained at the time she fled. The evidence does reflect that the officers were

4

still in the process of identifying all the persons at the scene and running warrant checks. It is not unreasonable for an officer to demand identification and check for outstanding warrants in the course of a detention. *Davis*, 947 S.W.2d at 245 n.6). Moreover, Officer Koch testified that he had not had an opportunity to speak to each of the suspects individually. Although appellant had herself been identified, the circumstances warranted detaining appellant until all present were identified and questioned by the officer. We hold that appellant's detention had not exceeded its lawful temporal limit at the time she ran from the officers. Once again, appellant relies on a factually distinguishable opinion. *See Collier v. State*, 843 S.W.2d 176 (Tex. App.—Houston [14th Dist.] 1992, no pet.).

Having concluded that appellant was being lawfully detained when she fled from the officers, and there being no dispute that the officers' subsequent conduct was lawful, we overrule the point of error and affirm the judgment of conviction.

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

Filed: August 30, 2001

Do Not Publish

5