NO. 07-01-0308-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



APRIL 8, 2002


______________________________



SHAWN O'BRIEN HALL
,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE COUNTY COURT AT LAW OF WALLER COUNTY;



NO. CC00-529; HON. JUNE JACKSON, PRESIDING


_______________________________



Before BOYD, C.J., QUINN and REAVIS, J.J.

 Appellant, Shawn O'Brien Hall, appealed his conviction for driving while intoxicated. 
The three points of error he asserted concern the trial court's refusal to 1) submit a jury
instruction addressing the validity of the initial stop conducted by the police officers, 2)
suppress evidence obtained via an allegedly illegal stop, and (3) grant a directed verdict
once the supposedly inadmissible evidence is suppressed. We need only consider the
second for it is dispositive, and, upon considering it, we reverse the judgment and remand
the cause. 

Background

 On September 9, 2000, an anonymous individual called the Waller County Sheriff's
Department stating that he or she had seen a red pickup truck traveling southbound in the
northbound lane of Highway 6. (1) The sheriff's dispatcher broadcast the information to
Troopers Ann Gormly (Gormly) and Wilton White, Jr. (White) of the Texas Department of
Public Safety. Again, the caller's identity was unknown, as was the location of the caller
when the anonymous tip was made or the reliability of the tipster, according to the
troopers. Furthermore, the record fails to disclose when the person made the call or the
amount of time that lapsed between the time of the call and the broadcast by the
dispatcher. Nevertheless, the two troopers proceeded to Highway 6 to investigate. 

 Approximately three to five minutes after receiving the dispatch, the troopers saw
a red pickup truck backing out of or turning around in the driveway of a local car dealership
located adjacent to the highway. The business was closed, given that the time was 2:30
a.m. After exiting, the red truck then "turned around, pulled back out on [Highway] 6 and
. . . proceeded toward Highway 290 eastbound, got on the ramp and got on 290,"
according to a trooper. After the truck had driven about half a mile, the troopers engaged
their emergency lights, stopped the vehicle, questioned the driver, i.e., appellant, and
administered to him various field sobriety tests, which he purportedly failed. Appellant was
then arrested, charged with, and convicted of driving while intoxicated.

 That the officers did not know the direction from which appellant came before
entering the dealership's driveway was undisputed. Similarly undisputed was that neither
peace officer saw appellant commit any traffic offense or drive erratically. Nor did they
testify that they saw appellant doing anything other than back out of the driveway before
deciding to stop him. So, the record did and does not disclose the length of time appellant
spent at the lot or the reason why he was there (other than to turn around or back out). 
Gormly also admitted that though she was able to see for approximately two miles at the
time, she did not see appellant traveling in the wrong direction. 

 Next, when questioned about the reasons for the stop, both troopers said that the
identity between the description of the vehicle in the anonymous tip and that driven by
appellant and the time frame caused them to act. To this, Gormly added that seeing
appellant turn his truck around in the driveway of a closed business at 2:30 a.m. further
aroused her "suspicion." Yet, White, the more experienced trooper who was acting as
Gormly's field training officer at the time, candidly represented that it was not unusual to
see cars turning around in the particular driveway at that hour. And, again, both peace
officers conceded that neither had seen appellant commit any traffic offense, drive
erratically, or violate any law prior to stopping him. (2) So too did they admit that but for the
broadcast from the dispatcher 1) they would have had no reason to stop appellant or 2)
nothing would have "peaked" their interest in the vehicle. In short, the sole basis for the
stop was the anonymous tip.

Point Two -- Refusal to Suppress Evidence


 Through his second point, appellant contended that the stop was illegal and,
therefore, the trial court was obligated to suppress all evidence obtained as a result of it. (3) 
We agree with the contention.

 Standard of Review 

 The applicable standard of review is described in State v. Wallett, 31 S.W.3d 329
(Tex. App.--Amarillo 2000, no pet.). We cite the litigants to that case. 

 Next, a law enforcement officer need not have probable cause to stop an individual. 
He need only have reasonable suspicion that criminal activity is afoot. Held v. State, 948
S.W.2d 45, 51 (Tex. App.--Houston [14th Dist.] 1997, pet. ref'd). This enables him to
temporarily detain (for investigatory purposes) those engaged in the activities creating the
reasonable suspicion. Furthermore, reasonable suspicion exists when the officer has
specific articulable facts which, when combined with rational inferences therefrom, would
allow him to reasonably suspect that a particular person has engaged, or is or soon will
be engaging, in criminal activity. Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App.
2001). Thus, the totality of the circumstances must be perused. 

 Next, when the circumstances implicate an anonymous tip, caution must be taken. 
This is so because the tip, standing alone, seldom provides the reasonable suspicion
necessary to authorize an investigative stop and detention. Alabama v. White, 496 U.S.
325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). In other words, "a police officer
generally cannot rely alone on a police broadcast of an anonymous phone call to establish
reasonable suspicion." Garcia v. State, 3 S.W.3d 227, 234-35 (Tex. App.-Houston [14th]
1999, no pet.); see Stewart v. State, 22 S.W.3d 646, 648-50 (Tex. App.-Austin 2000, pet.
ref'd) (holding that an uncorroborated caller's tip did not create reasonable suspicion);
Davis v. State, 989 S.W.2d 859, 862-65 (Tex. App.-Austin 1999, pet. ref'd) (holding the
same). This is so because the court has no way of evaluating the reliability of the
information provided by the anonymous source. Garcia v. State, 3 S.W.3d at 35. 
Consequently, there must be some further indicia from which a police officer may
reasonably conclude that the tip is reliable and a detention is justified. Id.; accord Dowler
v. State, 44 S.W.3d 666, 669-70 (Tex. App.-Austin 2001, pet. ref'd). That indicia may
come in the form of an officer's prior knowledge and experience and his corroboration of
the details of the tip. Dowler v. State, 44 S.W.3d at 670; Stewart v. State, 22 S.W.3d at
648; Garcia v. State, 3 S.W.3d at 235. Regarding the latter, the tip must be corroborated
not only as to the identity of the individual sought to be accused but also as to the
improper nature of his conduct. See Dowler v. State, 44 S.W.3d at 670 (holding that while
an accurate description of the subject's readily available location and appearance will help
the police correctly identify the person whom the tipster means to accuse, it does not show
that the tipster has knowledge of concealed criminal activity); Stewart v. State, 22 S.W.3d
at 648 (holding that the corroboration of details that are easily obtainable at the time of the
tip and which do not indicate criminal activity will not lend support to the tip).


 Application of Standard

 As previously mentioned, the anonymous tip served as the basis of the stop at bar. 
Each trooper admitted that; neither saw appellant do anything wrong. And, to the extent
the troopers found on Highway 6 a vehicle driven by appellant that matched the rather
broad and general description of the truck described by the tipster, those indicia at best
serve only to corroborate that appellant was the subject of the tip. They do not illustrate
that he engaged or was engaging in misconduct. Instead, effort was made to corroborate
the latter aspect of the tip through allusion to the time of night, appellant's turning around
in the dealership's driveway, and then driving away at an indeterminable yet lawful speed. 
Yet, these indicia also fall short of their intended mark. 

 Simply put, lawfully turning around on a public thoroughfare or exiting a private
driveway late at night and then driving away at some lawful speed does not reasonably
suggest that appellant previously drove down the road in an illegal manner. Nor does it
suggest that appellant was engaging or about to engage in criminal activity. (4) Again, the
troopers conceded as much when they acknowledged that they personally saw appellant
do nothing wrong and that nothing he did would have "peaked" their interest in his conduct
had they not heard the tip.

 We do not have before us evidence that the locale in question was a high crime
area, that appellant stopped at the business for any more than an incidental amount of
time, that Highways 6 or 290 were rarely traveled at 2:30 a.m., that it was unusual for cars
to be traveling on those roads at that time of night, that those traversing the two highways
tended to be involved in misconduct, that it was unusual for cars to access that portion of
Highway 6 or 290 via some non-descript speed under the posted limit, or that appellant
drove away erratically. (5) Again, each trooper admitted that nothing would have caused
them to question or suspect the activities of appellant had they not previously heard the
broadcast of the anonymous tip. (6) 

 We recognize that acts or circumstances need not be criminal in themselves to
create reasonable suspicion that misconduct is afoot. Woods v. State, 956 S.W.2d 33, 38
(Tex. Crim. App. 1997). Yet, to the extent that one attempts to use innocent circumstances
to create suspicion of that ilk, the totality of those indicia must nonetheless permit one to
reasonably deduce that criminal activity is afoot. The same is true with regard to the
corroboration of an anonymous tip. While the indicia used as corroboration needed not
be per se criminal, they must still be sufficient to permit one to reasonably deduce that
appellant engaged in the misconduct for which he was accused by the tipster. If it does
not, then the tip cannot be said to be reliable. 

 Given the record developed below, one cannot reasonably deduce from appellant's
mere use of the driveway of a closed business to turn-around late at night and his failure
to then speed away that he had previously drove down the road illegally. Thus, that aspect
of the anonymous tip accusing appellant of engaging in misconduct was not sufficiently
corroborated, see Stewart v. State, supra (holding that the State failed to sufficiently
corroborate the tip where the officer did not see appellant drive erratically or commit a
traffic offense), and the tip was not shown to be reliable. And, since the tip was the sole
allegation of misconduct or truly unusual activity committed by appellant, it did not vest the
troopers with probable cause or reasonable suspicion to stop him. In holding otherwise,
the trial court erred. 

 Next, the evidence tendered by the State to establish appellant's intoxication arose
as a consequence of the illegal stop. Thus, it was impermissibly tainted. Had the trial court
suppressed it as it should have, there would have been no basis upon which the State
could have prosecuted appellant; at least the record before fails to indicate that the State
had an alternate way to or other evidence upon which to secure a conviction. 
Consequently, we further hold that the error was harmful under Texas Rule of Appellate
Procedure 44.2(a). 

 Accordingly, the judgment is reversed and the cause remanded to the trial court for
further proceedings. (7) 


 Brian Quinn

 Justice


Publish.
1. Absent from the record is any evidence that the anonymous tipster imparted the license of the
vehicle supposedly traveling in the improper direction, the number of occupants therein, the year or make
of the truck, or any other information describing the vehicle involved, save for the comment about it being
small and red.
2. One officer (Gormly) did opine that appellant drove "slow, under the speed limit" when attempting
to access Highway 290. Yet, when questioned, she admitted that she could not estimate his purported
speed. Nor did she say that such evinced the involvement of criminal activity in any way.
3. Appellant raised the issue below via an oral motion to suppress urged immediately before trial
commenced, a request for a jury instruction regarding the validity of the stop and the jurors' inability to
consider tainted evidence, and a motion for directed verdict. Furthermore, in each instance, appellant
founded his contention upon the validity of the stop. Thus, it is clear that the question before us was first
presented to the trial court as required by Texas Rule of Appellate Procedure 33.1.
4. The record discloses that at some point in time, Highway 6 went from a two lane road to a divided
thoroughfare. Yet, it appears from the record before us that it may have only been a two lane road at the
point where the dealership's driveway intersected it. And, to the extent that it was, one cannot infer from the
record before us that appellant entered the driveway while traveling on Highway 6 in any particular direction. 

5. Indeed, one who has driven on highways and interstates and seen others do so could reasonably
conclude that accessing same at a reduced speed seems to be a common practice by many. 
6. That Trooper Gormly considered the practice suspicious does not mean that it was for purposes of
a Fourth Amendment analysis. The standard applicable to determining the existence of probable cause and
reasonable suspicion is objective, not subjective. Dowler v. State, 44 S.W.3d 666, 670 (Tex. App.-Austin
2001, pet. ref'd). Thus, an officer's subjective belief that some act is suspicious alone does not make it
suspicious. We must determine if the conclusion was reasonable given all the circumstances involved. And,
in this case, utilizing a driveway to turnaround and then driving onto a neighboring highway at some
incalculable speed does not, as a matter of law, permit an officer to reasonably deduce that the conduct was
suspicious. This is especially so where the officer failed to testify that her conclusion was based on any
experience or knowledge of the area, criminal conduct, or activities of a driver late at night. In sum, we are
left holding that Gormly's observation was nothing more than unfounded surmise, conjecture or speculation,
and such is not the stuff of reasonable suspicion. Davis v. State, 989 S.W.2d 859, 863 (Tex. App.-Austin
1999, pet. ref'd).
7. The admission of illegally seized evidence is trial error and requires remand for further proceedings,
as opposed to acquittal. Riley v. State, 825 S.W.2d 699, 701 (Tex. Crim. App. 1992).