ACCEPTED
03-15-00221-CR
5544994
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/4/2015 12:17:36 PM
JEFFREY D. KYLE
CLERK

## NO. 03-15-000221-CR

IN THE COURT OF APPEALS FOR
THE THIRD JUDICIAL DISTRICT OF TEXAS
AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

6/4/2015 12:17:36 PM

JEFFREY D. KYLE
Clerk

## MICHAEL BRYAN GRACE, *Appellant,*

### v.

## THE STATE OF TEXAS, *Appellee.*

*Arising from:*

Cause No. C-1-CR-13-211885
IN THE COUNTY COURT AT LAW NO. 6,
TRAVIS COUNTY, TEXAS

## BRIEF FOR APPELLANT

**SEAN SOLIS**
Attorney at Law
S.B.N. 24093982
University of Texas School of Law
Criminal Defense Clinic
Connally Center 4.302
727 E. Dean Keeton St.
Austin, Texas 78705
512-232-1300
512-471-3489 (FAX)
ssolis@utexas.edu

**RICHARD SEGURA, JR.**
Attorney at Law
S.B.N. 00788384

**Oral Argument Requested**

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. Proc. 38.1, the appellant hereby provides a complete list of all parties to the trial court's judgment, and the names and addresses of all trial and appellate counsel:

Counsel for the appellant in the trial court:

**MATTHEW WATKINS**
**RICHARD SEGURA, JR.**
Attorneys at Law
Univ. of Texas School of Law
Criminal Defense Clinic
Connally Center 4.302
727 E. Dean Keeton St.
Austin, Texas 78705

Counsel for the appellant in the appellate court:

**SEAN SOLIS**
**RICHARD SEGURA, JR.**
Attorneys at Law
Univ. of Texas School of Law
Criminal Defense Clinic
Connally Center 4.302
727 E. Dean Keeton St.
Austin, Texas 78705

Counsel for the appellee in the trial court:

**DANIELLE TIERNEY**
Assistant County Attorney
Travis County Attorney's Office
314 West 11th Street, Room 300
Austin, Texas 78701

Counsel for the appellee in the appellate court:

**GISELLE HORTON**
Assistant County Attorney
Travis County Attorney's Office
314 West 11th Street, Room 300
Austin, Texas 78701

ii

**TABLE OF CONTENTS**

IDENTITY OF PARTIES AND COUNSEL ........................................................... ii

TABLE OF CONTENTS ................................................................................... iii

INDEX OF AUTHORITIES.............................................................................. iv

STATEMENT OF THE CASE..............................................................................1

STATEMENT OF FACTS ...................................................................................1

SUMMARY OF APPELLANT'S ARGUMENT ...................................................3

POINT OF ERROR ONE ....................................................................................4

   I.  Standard of Review .................................................................................4

   II.  Analysis ................................................................................................4

CONCLUSION AND PRAYER .........................................................................18

CERTIFICATE OF COMPLIANCE WITH RULE 9.4..........................................19

CERTIFICATE OF SERVICE ...........................................................................19

# INDEX OF AUTHORITIES

**<u>Cases</u>**

*Davis v. State*, 989 S.W.2d 859 (Tex. App.—Austin 1999, pet. ref'd.) ...................10

*Derichsweiler v. State*, 348 S.W.3d 906 (Tex. Crim. App. 2011) ........................4, 12

*Florida v. J.L.*, 529 U.S. 266 (2000) ......................................................3, 6-7, 9, 14-6

*Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 185 (2004) ..........................................5

*Illinois v. Gates*, 462 U.S. 213 (1983).......................................................................17

*Navarette v. California*, 134 S.Ct. 1683 (2014) ................................................. 3, 11-2

*Smith v. State*, 58 S.W.2d 784 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd.)
...................................................................................................................... 16-7

*State v. Garcia*, No. 03-14-00048-CR, 2014 WL 4364623 (Tex. App.—Austin 2014,
no pet.)........................................................................................................... 8-9

*State v. Kerwick*, 393 S.W.3d 270 (Tex. Crim. App. 2013) ...........................4-5, 7-8

*Terry v. Ohio*, 392 U.S. 1 (1968)................................................................................4

*United States v. Arvizu*, 534 U.S. 266 (2002) ...........................................................5

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

## STATEMENT OF THE CASE

Michael Grace was charged by information with the offense of driving while intoxicated (DWI), alleged to have occurred on or about July 7, 2013. The information further alleged a prior conviction for the same offense. The case proceeded to a pretrial hearing with witnesses on a motion to suppress on October 28, 2014. The trial court denied the motion to suppress. On February 2, 2015, Grace entered a plea of no contest to the charged offense. On the same day, the trial court certified Grace's right to appeal. On March 3, 2015, Grace filed a motion for a new trial; it was denied. On April 7, 2015, Grace filed a notice of appeal.

## STATEMENT OF FACTS

The arresting officer did not witness Michael Grace commit any traffic violation on the night he was arrested for DWI. (R.R. at 2: 33). The officer did not witness Grace swerving or speeding. *Id.* He did not witness any of the indications that would normally hint that something was wrong. *Id.* All that the officer had to base reasonable suspicion on was one word in a computer-aided dispatch (CAD) report: "intoxicated." (R.R. at 2: 31).

The CAD report was generated following a 911 call by Cary Allen. The officer did not personally hear the call nor was he familiar with the caller (R.R. at 2:

1

31-2). Unbeknownst to the officer, Allen works as a doorman at Ego's Karaoke bar three nights a week. (R.R. at 2: 7). While Allen was on-duty at Ego's, he called 911 "to report a drunk driver." (R.R. at 2: 12; State's ex. 1). Allen did not relay any personal training or experience that he had in determining whether people are intoxicated. (R.R. at 2: 16). He did not relay the number of drinks Grace had. *Id.* He did not relay any basis for thinking that Grace was drunk. *Id.* The only things that Allen relayed to the 911 dispatcher regarding Grace's condition were that "he left intoxicated" and that he is "drunk." (R.R. at 2: 17; State's ex. 1).

Allen made two calls to the 911 dispatcher. The first call, made around 2:07 a.m., was to inform the operator that Grace was "drunk" and sitting in a blue Scion in the Ego's parking lot. (R.R. at 2: 24; State's ex. 1). Allen also gave the operator Grace's license plate number—BJN-1967. (R.R. at 2: 25; State's ex. 1). Finally, he described Grace as a "Caucasian male with a grey beard, probably about 55-60 years old." (R.R. at 2: 24; State's ex. 1). The second call was to report that Grace had taken off southbound on South Congress Avenue. (R.R. at 2: 26; State's ex. 1).

Officer Wright, an officer with the Austin Police Department, was dispatched to respond to what was initially a public intoxication call. (R.R. at 2: 24). He testified that all he learned about the call was that:

"Someone from Ego's Bar called in saying there was someone in the parking lot driving a blue Scion, and they gave a license plate and provided a description of the person in the vehicle."

*Id.* As Officer Wright was en route to the call, the dispatch updated and he was informed the vehicle had left the scene. *Id.* He observed a blue Scion passing by him going southbound. (R.R. at 2: 26). The officer turned around and caught up to the vehicle around east Oltorf and Eastside Drive. *Id.* "After [he] verified the license plate," Officer Wright "initiated a traffic stop." (R.R. at 2: 27).

## SUMMARY OF APPELLANT'S ARGUMENT

***Point of Error One:*** The trial court erred in denying Grace's motion to suppress. It gave improper weight to Allen's description of Grace's readily observable location and appearance. The United States Supreme Court held that this information:

"Does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person."

*Florida v. J.L.*, 529 U.S. 266, 272 (2000). Furthermore, a conclusory allegation that Grace "left intoxicated" and that he was "drunk" does not give rise to reasonable suspicion. The Court recently affirmed the proposition that a "bare-bones tip [is] unreliable." *Navarette v. California*, 134 S.Ct. 1683, 1692 (2014). This, combined with the fact that the arresting officer did not witness Grace commit any traffic violation before initiating the investigatory stop, demonstrates that the officer did

3

not possess any specific, articulable facts that, combined with rational inferences from those facts would lead him to reasonably conclude that Grace was, or soon would be, engaged in criminal activity. *See State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). The judgment of the trial court should be reversed.

## POINT OF ERROR ONE

### I. Standard of Review

In reviewing a trial court's ruling on a pre-trial motion to suppress, an appellate court applies a bifurcated standard of review. *Id.* The trial judge's determination of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record. *Id.* But when mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, an appellate court reviews the trial judge's ruling *de novo*. *Id.* Whether the facts known to the officer at the time of the detention amount to reasonable suspicion is a mixed question of law and fact that is reviewed *de novo* on appeal. *Id.*

### II. Analysis

The Fourth Amendment to the United States Constitution permits a warrantless detention of a person, short of a full-blown custodial arrest, if the detention is justified by reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1, 28 (1968); *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). "[A] law

4

enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and investigate further." *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 185 (2004). Reasonable suspicion to detain a person exists if an officer has specific, articulable facts that, combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Kerwick*, 393 S.W.3d at 273. These facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to crime. *Id.* "Although an officer's reliance on a mere 'hunch' is insufficient to justify an investigatory stop, the likelihood of criminal activity need not rise to the level required for probable cause." *United States v. Arvizu*, 534 U.S. 266, 274 (2002). The test for reasonable suspicion is an objective one that focuses solely on whether an objective basis exists for the detention and disregards the officer's subjective intent. *Kerwick*, 393 S.W.3d at 274. A reasonable-suspicion determination requires looking at the totality of the circumstances, and reasonable suspicion may exist even if those circumstances standing alone may be just as consistent with innocent activity as criminal activity. *Id.*

## A. U.S. Supreme Court Precedent Demands Reversal

The present case is similar to *Florida v. J.L.* There, an informant reported that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. *J.L.*, 529 U.S. at 268. Apart from the tip, the officers had no reason to suspect J.L. of illegal conduct. *Id.* One of the officers frisked J.L. and seized a gun from his pocket. *Id.* He was charged with carrying a concealed firearm without a license and possessing a firearm while under the age of 18. *Id.* at 269. A unanimous Supreme Court held that the trial court properly granted J.L.'s motion to suppress because a bare-bones "tip lacking indicia of reliability … does not justify a stop and frisk whenever and however it alleges the illegal possession of a firearm." *Id.* at 274.

Here, like in *J.L.*, we are dealing with a bare-bones tip. The only information that Allen provided to the police was a general description of Grace, the make, model, and license plate number of Grace's car, and a conclusory allegation that Grace was intoxicated. A subject's readily observable appearance is not enough to justify an investigatory stop. In the words of the Court:

> "An accurate description of a subject's readily observable location and appearance … does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person."

6

*Id.* at 272. Discounting Allen's description of Grace's readily observable appearance, we are left with the conclusory allegation that Grace was intoxicated. A conclusory allegation, even one that turns out to be accurate, does not amount to the *specific, articulable facts* required by the Fourth Amendment. As the Court noted in *J.L.*:

> "The … call … provided no predictive information and therefore left the police without means to test the informant's knowledge and credibility. That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting J.L. of engaging in unlawful conduct: the reasonableness of the official suspicion must be measured by what the officers knew before they conducted their search."

*Id.* at 271. The call here, like the one in *J.L.*, provided no predictive information. Allen did not relay the number of drinks Grace had. He did not relay any basis for thinking that Grace was drunk. He did not relay any personal training he had in determining whether people are intoxicated. As a result, Allen left the police without the means to test his credibility.

Apart from the tip, Officer Wright had no specific and articulable facts to support the investigatory stop. The officer testified that he did not know why Allen assumed that Grace was intoxicated. He did not witness Grace commit any traffic violation before the stop. He did not observe Grace swerving between lanes. He did not observe Grace speeding. He did not possess any specific, articulable facts that,

7

combined with rational inferences from those facts would lead him to reasonably conclude that Grace was, or soon would be, engaged in criminal activity. *See Kerwick*, 393 S.W.3d at 273.

## B. This Court's Precedent Demands Reversal

This court affirmed the granting of a motion to suppress on similar facts as recently as last year. In *State v. Garcia*, an officer was on patrol when a 911 caller who identified himself as "Eric" reported "a possible intoxicated driver in line at the to-go line" at a fast-food restaurant. *State v. Garcia*, No. 03-14-00048-CR, 2014 WL 4364623, at *1 (Tex. App.—Austin 2014, no pet.). The officer testified that "the caller … had seen the vehicle swerving on First Street, and … gave a description of a silver two-door Acura with a Hispanic male driver with black hair." *Id.* Based on the fact that it was 2:40 a.m. in the morning (the officer testified that bars close at 2 a.m.), that the fast-food restaurant was located near a bar district, that the officer had served for 27 years with the Austin police department, and that intoxicated drivers tend to swerve, the officer initiated a temporary detention. *Id.* On cross-examination, the officer testified that he did not know how long the 911 caller followed the car he reported as swerving, did not know how many times the caller saw the driver swerve, and did not know whether any other vehicles were placed in danger by the reported swerving. *Id.*

8

Our case is indistinguishable from *Garcia*. Like in *Garcia*, Grace was arrested early in the morning, around 2:07 a.m., just as bars were closing. However, as this court noted:

> "The circumstances surrounding appellee's driving—early morning near a bar district—do not describe illegal conduct and are not alone sufficient to provide reasonable suspicion of wrongdoing."

*Id.* at *3. Like in *Garcia*, Grace was arrested based on a 911 call that consisted solely of a conclusory allegation. Not good enough:

> "The caller's suspicion that appellee was possibly intoxicated is not, without more, sufficient to provide reasonable suspicion for the temporary detention because there is no evidence of what facts … that conclusion was based on and no evidence of what experience the caller brought to bear to interpret those facts."

*Id.* Finally, in both *Garcia* and the present case, the 911 caller provided information about the defendants' appearance as well as the make, model, and license plate number of their cars. This issue was not addressed in *Garcia*, but as held in *J.L.*, a description of a subject's readily observable appearance is not enough to justify an investigatory stop. *See J.L.*, 529 U.S. at 272.

The one key difference is that in *Garcia*, the caller alleged that he had "seen a vehicle swerving on First Street." Here, Allen did not allege that Grace was swerving in his vehicle. To the contrary, Officer Wright testified that he did not

9

witness Grace swerving. Because this case is stronger on the facts than *Garcia*, this court should reverse the trial court's denial of Grace's motion to suppress.

*Garcia* is not an anomalous decision by this court. In *Davis*, a police officer received a dispatch based on information from a call about a full-sized Chevy Blazer with dealer's tags 5D1180 in the area of mile post 259 on I-35 driving in a northbound direction; that the vehicle was occupied by three white males; that the vehicle was being driven recklessly; and that the occupants were "possibly smoking marijuana." *Davis v. State*, 989 S.W.2d 859, 861 (Tex. App.—Austin 1999, pet. ref'd.). The officer testified that he observed no traffic offense being committed and stopped the Blazer solely on the basis of the information in the dispatch. *Id.* Following the stop, the officer found marijuana and cocaine in the vehicle. *Id.* This court overruled the trial court's denial of the defendant's motion to suppress the evidence, holding that the conclusory allegation that the occupants of the Blazer were "possibly smoking marijuana" did not provide the officer with reasonable suspicion. *Id.* at 864. "[T]he tipster did not indicate how she was able to make this determination. The use of 'possibly' indicated her uncertainty." *Id.*

*Garcia* and *Davis* stand for the proposition that an uncorroborated tip from an informant conveying a conclusory allegation does not provide an officer with the reasonable suspicion necessary to initiate an investigatory stop. In such a situation,

10

the officer has no specific and articulable facts because none are provided by the informant. Furthermore, the officer himself does not generate any specific and articulable facts by virtue of the fact that the tip is uncorroborated. Without any specific and articulable facts, it follows that there is no objective basis for the detention. The detention must have been based on the subjective intent of the officer—in other words, the officer relied on a hunch.

### C. *Navarette and Derichsweiler are Distinguishable*

*Navarette* is distinguishable from the present case because "the 911 caller in [*Navarette*] reported more than a minor traffic infraction and *more than a conclusory allegation of drunk or reckless driving*. Instead, she alleged a *specific* and dangerous result of the driver's conduct: running another car off the highway." *Navarette*, 134 S.Ct. at 1691 (emphasis added).

Contrast that with our case. Allen reported a conclusory allegation of drunk driving. He called in to "report a drunk driver." The only subsequent descriptions he gave of Grace's condition was that Grace "left intoxicated" and that he was "drunk." Moreover, Allen did not allege a specific and dangerous result of Grace's conduct. He did not describe any conduct that "bears … a resemblance to paradigmatic manifestations of drunk driving…" *See id.* Allen's 911 call amounted to nothing more than an allegation of the name of an offense in the Texas Penal Code.

11

The Court in *Navarette* went out of its way to reaffirm the holding in *J.L.*: a "bare-bones tip [is] unreliable." *Id.* at 1692.

*Derichsweiler* is also distinguishable from the present case because there, the witnesses provided specific, articulable facts describing the defendant's conduct. In that case, the witnesses called 911 to report an encounter with a man who pulled up beside them in the drive-thru lane at McDonald's. *Derichsweiler*, 348 S.W.3d at 909. The man was "[j]ust kind of grinning…and looking straight at [the witnesses]." *Id.* The witnesses continued to describe the defendant's conduct until the police arrived. *Id.* at 910. One of the officers talked to the witnesses and took down their contact information. *Id.* The court, in affirming Derichsweiler's conviction, relied upon the fact that the witnesses provided specific, articulable facts to the 911 dispatcher:

> "They identified themselves to the 911 dispatcher and remained answerable for their report after the fact. That report was based upon their own first-hand perceptions, many of which they continuously and contemporaneously narrated to the police via the 911 dispatcher."

*Id.* at 915. *Derichsweiler* is different from our case in two important ways. First, the witnesses in *Derichsweiler* provided specific, articulable facts describing the defendant's conduct. They provided a *description* of the suspicious conduct that the defendant was engaging in: grinning and staring in a way that made the witnesses feel "threatened" and "intimidated." *See id.* at 909. By describing Derichsweiler's

12

conduct, the witnesses supplied the officer with specific, articulable facts that could lead a reasonable officer to conclude that the defendant was, or would soon be, engaged in criminal activity. Not so in the present case. Allen merely called 911 and alleged that Grace was "drunk." A conclusory allegation, by definition, is devoid of specific, articulable facts.

Second, the witnesses in *Derichsweiler* were more reliable than the witness in the present case. The witnesses in *Derichsweiler* continued to describe the defendant's conduct to the 911 dispatcher until the police arrived on-scene. When the police arrived, the witnesses gave out their contact information. In the present case, Allen did not describe Grace's driving. He was not there on-scene when Grace was arrested. In fact, he did not speak to the arresting officer at all. Officer Wright testified that he was unfamiliar with Allen and his level of familiarity in identifying intoxicated individuals. All the officer had to base reasonable suspicion off of was a conclusory allegation from an unknown man.

### D. *The Trial Court Erred at the Motion to Suppress Hearing*

Before turning to the trial court, it is important to clear up a misconception in the State's argument at the motion to suppress hearing. The State argued that the officer had reasonable suspicion because he "could certainly go back to Ego's and ask more questions if he had more questions about the reliability of the information

he was getting." (R.R. at 2: 40-1). This argument represents a fundamental misunderstanding of Fourth Amendment jurisprudence. It is well settled that "the reasonableness of the official suspicion must be measured by what the officers knew before they conducted their search." *J.L.*, 529 U.S. at 271. Just because the officer had the ability to go back to Ego's and get something more from the witness than a conclusory allegation does not save the State's case. The officer must be armed with reasonable suspicion *before* conducting the investigatory stop.

The State makes a similar argument with regard to Allen's experience in in identifying intoxicated individuals:

> "You have a witness who has 20 years of experience in the restaurant and bar industry. He works three nights a week at Ego's. He deals with this almost nightly. I can't think of a more reliable witness to call the police and say 'I think I have somebody with too much to drink on my hands.'"

(R.R. at 2: 41). Again, the flaw with this argument is that Allen did not convey these facts to the 911 dispatcher. When Officer Wright made the stop, he did not know about Allen's experience in the restaurant and bar industry. Nor did he know about Allen's experience in dealing with intoxicated individuals. The Fourth Amendment does not allow for *post hoc* attainment of reasonable suspicion on the part of the arresting officer.

In denying Grace's motion to suppress, the trial court improperly relied upon the fact that Allen provided Grace's readily observable location and appearance:

"The witness provided a description of the defendant: Caucasian male, gray beard, 50s. The officer was also aware that the civilian witness had provided information about the color of the vehicle. The model … of the vehicle. There was information about his location. There was information about when this was happening … My understanding is that indicia of reliability really goes to whether or not … the caller has provided sufficient identifying information…"

(R.R. at 2: 50-1). The trial court erred. As the Supreme Court explained in *J.L.*:

"An accurate description of a subject's readily observable location and appearance … does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person."

*J.L.*, 529 U.S. at 272. The Fourth Amendment does not permit investigatory stops based on a caller providing "sufficient identifying information." If it did, it "would enable any person seeking to harass another to set in motion an intrusive, embarrassing police search of the targeted person simply by placing an anonymous call…" *Id.* Instead of focusing its analysis on sufficient identifying information, the trial court should have focused on whether the tip was reliable in its assertion of illegality. The tip was not reliable in its assertion of illegality because it consisted solely of a conclusory allegation in violation of *J.L.*, *Garcia*, *Davis*, and the dictum in *Navarette*. If the Fourth Amendment permitted bare-bones tips, we would still have the problem that the Supreme Court identified in *J.L.*: potential harassment of innocent victims by anonymous callers. Under the State's rule, all a caller would

15

have to do to initiate an intrusive police search would be to provide "sufficient identifying information" and allege the name of an offense. This cannot be the case.

*E. The Trial Court Erred at the Motion for New Trial Hearing*

At the motion for new trial hearing, the trial court gave an additional reason for denying Grace's motion to suppress:

> "So perhaps the reason why the Courts … are requiring more of … a … basis … for the complainant's allegation is because the complainant is not only anonymous to the dispatch, but also not available, I presume, to testify at trial. This was a different scenario. The State was able to … not only subpoena, but obtain testimony from a live witness who observed the defendant and indicated why he believed that the defendant was intoxicated."

(R.R. at 3: 11-2). The trial court reasoned that because this case involved a known informant who later testified at the motion to suppress hearing, it was immaterial that he did not provide specific, articulable facts to the 911 dispatcher. This is error for two reasons. First, Officer Wright did not know at the time he arrested Grace that Allen was going to testify at a future motion to suppress hearing. As discussed *supra* "the reasonableness of the official suspicion must be measured by what the officers knew before they conducted their search." *J.L.*, 529 U.S. at 271. Second, a tip from a known informant is not *per se* reliable:

> "Whether a detention was reasonable under the circumstances turns upon the reliability of the information possessed by the police, regardless of its origin, i.e., whether the information was observed first hand or obtained from a confidential informant, an anonymous tipster, or a concerned citizen reporting a possible crime in progress or of recent origin."

16

*Smith v. State*, 58 S.W.2d 784, 789 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd.). A known informant can provide the requisite reasonable suspicion to justify an investigative detention so long as *additional facts are present* to demonstrate the informant's reliability. *Id.* at 790 (emphasis added). Where the information has a low degree of reliability, more is required to justify an investigative detention and, under the totality of the circumstances approach, the informant's veracity, reliability, and basis of knowledge are highly relevant. *Id.*; *see also Illinois v. Gates*, 462 U.S. 213, 214 (1983).

The *Gates* factors must be applied to what the police knew about Allen prior to Officer Wright initiating the investigatory stop. Regarding Allen's veracity and reliability, Officer Wright testified that he was not personally familiar with Allen at the time of the 911 call. He did not know what kind of training Allen had in observing possible signs of intoxication. Nor did he know how much experience Allen had in identifying those factors. Turning to the final *Gates* factor, basis of knowledge, Allen did not relay the number of drinks Grace had or any basis for thinking that Grace was drunk. Thus, even though Allen was a known informant, because he did not provide specific, articulable facts, and because his veracity, reliability, and basis of knowledge were questionable at the time of Grace's arrest, the trial court erred in denying Grace's motion to suppress.

17

## CONCLUSION AND PRAYER

It is respectfully submitted that all things are regular and the judgment of the trial court should be reversed.

/s/ Sean Solis
**SEAN SOLIS**
Attorney at Law
S.B.N. 24093982
Univ. of Texas School of Law
Criminal Defense Clinic
Connally Center 4.302
727 E. Dean Keeton St.
Austin, Texas 78705
512-232-1300
512-471-3489 (FAX)
ssolis@utexas.edu

**CERTIFICATE OF COMPLIANCE WITH RULE 9.4**

I hereby certify that this document complies with the requirements of Tex. R. App. Proc. 9.4(i)(2)(B) because there are 4,103 words in this document, excluding the portions of the document excepted from the word count under Rule 9(i)(1), as calculated by the MS Word computer program used to prepare it.

*/s/ Sean Solis*
**SEAN SOLIS**
Attorney at Law

**CERTIFICATE OF SERVICE**

Pursuant to Tex. R. App. Proc. 9.5(e), I hereby certify that a true and correct copy of the foregoing instrument was emailed to the counsel for the State on June 4, 2015:

Ms. Giselle Horton
Assistant County Attorney
Travis County Attorney's Office
314 West 11th Street, Room 300
Austin, Texas 78701

*/s/ Sean Solis*
**SEAN SOLIS**
Attorney at Law