

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-07-146-CR**

TODD WAYNE SWAFFAR        APPELLANT

V.

THE STATE OF TEXAS        STATE

------------

FROM COUNTY CRIMINAL COURT NO. 2 OF DENTON COUNTY

------------

## OPINION

------------

A jury found Appellant Todd Wayne Swaffar guilty of driving while intoxicated (DWI), and the trial court sentenced him to fifteen days' confinement and a $2,000 fine. On appeal, Appellant contends in a single point that the trial court erred by denying his motion to suppress. Because we hold that no reasonable suspicion supported the stop and that the State did not prove that the stop was justified as a community caretaking function, we

reverse the trial court's judgment and remand this case to the trial court for further proceedings consistent with this opinion.

## I. BACKGROUND FACTS

According to his testimony, during the late night hours of May 20, 2006, Officer Jose Flores of the Lewisville Police Department "[r]eceived a dispatch on a possible disturbance that occurred at a location off of Pier 121 Marina. We were advised that a caller called in saying there was a male pushing around a female in the parking lot." The caller refused to give her name and insisted on remaining anonymous.

Officer Flores testified, "[W]e were told that [the anonymous call] was related to a maroon vehicle that was occupied by a male and a female, that they had just left the area after the dispatch came out." Officer Flores was familiar with the area in which the two people were purportedly located and knew that, because of road construction, there was only one way into and out of the parking lot. Therefore, Officer Flores, who was already located nearby, drove down the road toward the parking lot, knowing that if a vehicle was leaving from the area he would quickly pass it. Within one minute of receiving the dispatch call, Officer Flores passed a maroon Honda four-door car with a male driver and a female passenger exiting the area. He turned around and followed the car.

2

When he reached the vehicle, Officer Flores began to videotape it because he "was advised also that the driver was possibly intoxicated." Officer Flores could not see inside the car with great detail because it was too dark. He could tell that the man and woman were "occupied," but he saw no fighting. While he was following the car, Officer Flores saw the car swerve within its own lane of traffic, but he did not notice the driver commit any traffic infractions, although he testified that when he later reviewed the in-car video, he noticed that Appellant had run a stop sign.

Officer Flores continued to follow the car, and when Appellant reached Standridge Drive to travel toward Highway 121, the officer activated his roof lights because he wanted to stop the car before it got to Highway 121. When the car stopped at a red light, neither the driver nor the passenger tried to get out of the car.

Officer Flores followed the car another 1,000 feet after he activated his lights. When the car reached the light at Highway 121, Officer Flores hit his siren a few times, and Appellant eventually stopped after he had traveled another 1,000 feet.

Despite the fact that Officer Flores made no effort to stop the car to investigate the woman's safety until after he had turned on his camera and

3

followed the car from the original location off Pier 121 Marina to Highway 121 because he had been told the driver might be intoxicated, the officer testified,

Q. Now, Officer, when you approached the vehicle, was it your intent to perform a DWI investigation?

A. No. My intent for the stop was in relation to the disturbance.

Q. Okay. And again remind the Court what type of disturbance was it?

A. It was possibly a domestic disturbance between a male and a female.

Q. Officer, were you concerned for the people's welfare inside the vehicle?

A. Yes, sir.

When the car finally did pull over, the officer approached the vehicle's driver and immediately detected a moderate odor of alcohol on his breath. The car's driver was Appellant.

At trial, Appellant moved to suppress evidence of the stop, arguing that the anonymous tip along with the officer's failure to independently observe Appellant commit any traffic law violations provided an insufficient basis to initiate the stop. The trial court denied Appellant's motion.

After the trial court's ruling, a jury heard the evidence and convicted Appellant of DWI, and the trial court sentenced him. Appellant now appeals the

4

trial court's denial of his motion to suppress. In his sole point, he contends that the trial court erred by denying his motion to suppress when the arresting officer detained him on the sole basis of an anonymous tip which was not sufficiently corroborated.

## II. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.[1] In reviewing the trial court's decision, we do not engage in our own factual review.[2] The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.[3] Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.[4] But when application-of-law-to-fact questions do not turn on

---

[1] *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

[2] *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).

[3] *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006).

[4] *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101,

5

the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo.[5]

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling.[6] When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings.[7] We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling.[8]

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court

---

108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

[5] *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

[6] *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

[7] *Kelly*, 204 S.W.3d at 819; *see Amador*, 221 S.W.3d at 673; *Wiede*, 214 S.W.3d at 25.

[8] *Kelly*, 204 S.W.3d at 819.

gave the wrong reason for its ruling.[9]

### III.  THE STOP IS NOT JUSTIFIED ON THE BASIS OF REASONABLE SUSPICION

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts.[10]  An officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law.[11]  Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity.[12]  This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists.[13]  In determining whether reasonable suspicion supports a stop, we look only at those facts known to the officer at

---

[9] *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

[10] *Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000)*.

[11] *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

[12] *Id*. at 492–93.

[13] *Id*. at 492.

the inception of the stop.[14]

In the case before us, an anonymous tip triggered the police investigation.

As our sister court in Austin has explained,

> An anonymous tip usually will justify the initiation of a police investigation. However, an anonymous tip or telephone call alone rarely will establish the requisite level of suspicion necessary to justify an investigative detention. Normally, there must be some further indicia of reliability—additional facts from which a police officer may reasonably conclude that the tip is reliable and a detention is justified. To justify a police officer's conclusion that a crime has been or is being committed, the officer generally cannot rely alone on a police broadcast of an anonymous phone call to establish probable cause or reasonable suspicion.
>
> When an investigative detention is based solely on an anonymous tip, the court often has no way of evaluating the reliability of the information from the anonymous source. If an anonymous tip has a low degree of reliability, more information will be required to establish the requisite level of suspicion to justify an investigative detention. An anonymous tip may, however, be sufficient if it contains sufficient "indicia of reliability" or if some aspects of it are sufficiently corroborated.
>
> An officer's prior knowledge, his experience, and his corroboration of the details of the tip may be considered in giving the anonymous tip the weight it deserves. Mere corroboration of details, however, that are easily obtainable at the time the information is provided will not support a finding of probable cause nor furnish the basis for reasonable suspicion.
>
> In *Glenn v. State*, the [Amarillo] court found that "the following are significant in determining whether reasonable suspicion exists for a temporary detention based upon information

---

[14] *State v. Griffey*, 241 S.W.3d 700, 704 (Tex. App.—Austin 2007, pet. ref'd).

from an unknown tipster:  (1) accurately predicting future behavior of third parties;  (2) corroboration of a detail linking the accused to the stated criminal activity;  and (3) a particularized and objective reason to suspect the accused."[15]

A tipster's accurate description of a person's looks and whereabouts may help the police correctly identify the person as the one whom the tipster intended to accuse, but it does nothing to show that the tipster had information that the person was involved in criminal activity.[16]

The caller in this case refused to give her name and insisted on remaining anonymous, although Officer Flores suggested that the police somehow found out her name.  It is unclear from his testimony whether the police learned the name of the actual caller or only the name of the person connected with the telephone on which the call was made.

The anonymous call was not made by someone who remained on the scene or who remained there long enough to make sure that the officer detained the correct vehicle.  To Officer Flores's knowledge, the caller did not make herself readily available to be called to court, and he did not have her telephone number, her address, or a description of her.

---

[15] *Davis v. State*, 989 S.W.2d 859, 863–864 (Tex. App.—Austin 1999, pet. ref'd) (citations omitted).

[16] *Dowler v. State*, 44 S.W.3d 666, 670 (Tex. App.—Austin 2001, pet. ref'd).

The caller did not provide a license plate number, a make of car, or a description of the people involved except gender and number. Nothing in the tip suggested a relationship between the man and woman that would satisfy the requisites of a domestic violence assault.[17] Indeed, Officer Flores described the caller's description of the behavior she viewed as only a "possible assault." On cross-examination, he testified,

Q. Sure. Okay. I guess what I'm getting at is, you didn't have a specific report, hey, I just saw a man hit a woman in the face, I saw a man push a woman to the ground and kick her, something like that?

A. Correct.

Q. You had something to investigate, right? But you didn't have a specific report of a crime?

A. True.

We therefore hold that the anonymous tip was insufficient to establish reasonable suspicion for the stop.

Further, Officer Flores did not observe any fighting. When the car stopped at a red light, neither Appellant nor the passenger tried to get out of the car. Additionally, Officer Flores did not see Appellant commit any traffic violations before the stop. The officer's testimony that when he reviewed the in-car videotape, he noticed that Appellant had run a stop sign is of no

---

[17] *See* TEX. PENAL CODE ANN. § 22.01 (Vernon 2007).

10

significance because the officer admitted that he did not see Appellant run the stop sign. We therefore cannot consider this evidence in determining whether the officer had reasonable suspicion to stop Appellant.[18] While the officer did testify that he saw Appellant swerve within his own lane and that the amount of time that Appellant used to stop in response to the officer's signal and siren was not normal, these observations do not rise to the level of reasonable suspicion.

Based on the totality of the circumstances, we hold that Officer Flores's independent observations coupled with the anonymous tip did not establish reasonable suspicion for the stop.

### IV. THE STOP IS NOT JUSTIFIED ON THE BASIS OF THE COMMUNITY CARETAKING DOCTRINE

"[T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid."[19] Therefore, "even without reasonable suspicion or probable cause that an offense has been committed, a police officer may reasonably seize an individual through the exercise of his

---

[18] *See Griffey*, 241 S.W.3d at 704.

[19] *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S. Ct. 2408, 2413 (1978).

11

community caretaking function."[20] Thus, under the community caretaking doctrine, "[a]s part of an officer's duty to 'serve and protect,' an officer 'may stop and assist an individual whom a reasonable person, given the totality of the circumstances, would believe is in need of help.'"[21] Determining whether an officer has properly invoked his community caretaking function is a two-step process.[22] First, the reviewing court must determine whether the officer was primarily motivated by a community caretaking purpose.[23] Second, the court must determine whether the officer's belief that his assistance was required was reasonable.[24]

The first step recognizes that the community caretaking function is "totally divorced from the detection, investigation, or acquisition of evidence relating to a violation of a criminal statute."[25] If the reviewing court determines that the officer was primarily motivated by a non-community caretaking

---

[20] *Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002); *Wright v. State*, 7 S.W.3d 148, 151–52 (Tex. Crim. App. 1999).

[21] *Corbin*, 85 S.W.3d at 276 (quoting *Wright*, 7 S.W.3d at 151–52).

[22] *See id.* at 277.

[23] *Id.*

[24] *Id.*

[25] *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S. Ct. 2523, 2528 (1973).

12

purpose, then the community caretaking doctrine is inapplicable to justify his intrusion.[26]

When he reached the vehicle, Officer Flores began to record it as he followed it, not because he was concerned for the safety of the woman, but because he was advised by the anonymous caller that the driver was possibly intoxicated. Although Officer Flores could have stopped the vehicle immediately to check on the welfare of the woman, he chose not to do so. Instead, he followed the vehicle with his camera recording Appellant's driving.

Taking as true everything that Officer Flores said, he was not concerned that Appellant or his passenger was in need of assistance. He was concerned that an assault had occurred, and he stopped Appellant to investigate an assault called in by an anonymous caller. Officer Flores testified on direct examination,

> Q. Now, Officer, when you approached that vehicle, was it your intent to perform a DWI investigation?
>
> A. No. My intent for the stop was in relation to the disturbance.
>
> Q. Okay. And again remind the court what type of disturbance was it?
>
> A. It was possibly a domestic disturbance between a male and a female.

---

[26] *Corbin*, 85 S.W.3d at 277.

Q.     Officer, were you concerned for the people's welfare inside the vehicle?

A.     Yes, sir.

On cross-examination, Officer Flores testified,

Q.     Officer, your reason for stopping that car was to investigate a possible assault; is that correct?

A.     Yes, sir.

Q.     And you had no other reason to stop that car, correct?

A.     Correct.

. . . .

Q.     Okay.  And in this case you did not stop him for running a stop sign, you stopped him to investigate an assault?

A.     Correct, sir.

Q.     And the assault was — there was a call in by what you said was an anonymous caller; is that correct?

A.     Yes.

Q.     And what was relayed to you was that the anonymous caller had said there that [sic] was a man pushing around a woman—

A.     Yes.

. . . .

Q.     But that's not a specific description of an assault, is it?

A.     It's not specifically stating what it is.

14

Q. I mean a man could be pushing around a woman for reasons that are not a crime? I mean it might not add up to a crime, right?

. . . .

A. Yes.

Officer Flores testified that he stopped Appellant to investigate an assault and, in response to the prosecutor's leading question regarding the officer's "primary concern when [he] approached the vehicle," responded that it was "[t]o make sure that the people in the vehicle were not involved in an altercation." By the time he finally pulled the maroon car over, he knew that any assault was over. He had seen inside the car, determined that a man and a woman were inside, and knew that, although they were "occupied," they were not fighting. After the officer stopped the car, he investigated the purported assault and learned that no assault had occurred.

The community caretaking function must be "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."[27] Because the evidence shows that Officer Flores was investigating a crime and that the criminal investigation was in fact the primary purpose for the stop, the community caretaking doctrine cannot justify the stop. We sustain Appellant's sole point.

---

[27] *Cady*, 413 U.S. at 441, 93 S. Ct. at 2528.

15

## V. CONCLUSION

Because we hold that the stop was not justified by reasonable suspicion or the community caretaking doctrine, we reverse the trial court's judgment and remand this case to the trial court for proceedings consistent with this opinion.

LEE ANN DAUPHINOT
JUSTICE

PANEL M: DAUPHINOT, HOLMAN, and WALKER, JJ.

PUBLISH

DELIVERED: June 12, 2008

16