

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

---

## NO. 2-07-335-CR

---

THE STATE OF TEXAS                                                    APPELLANT

V.

TIMOTHY EUGENE SCHMIDT                                               APPELLEE

------------

### FROM COUNTY CRIMINAL COURT NO. 5 OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellee Timothy Eugene Schmidt was arrested and charged with driving while intoxicated. Schmidt filed a motion to suppress evidence seized without a search warrant, arguing that the arresting officer did not have reasonable

---

[1] *See* Tex. R. App. P. 47.4.

suspicion to initiate the traffic stop. The trial court granted the motion to suppress, and the State appeals that determination. We will affirm.

## II. BACKGROUND

At approximately ten o'clock one night, Officer Keith Burris received a dispatch call, informing him that two callers reported a reckless, possibly intoxicated driver near Trophy Club Drive and Marshall Creek Road. The callers told dispatch that the vehicle was a white Chevrolet truck with license plate number 90BVVZ and that it had turned right onto Marshall Creek Road. Officer Burris drove in that direction, turned right onto Marshall Creek Road, and saw a truck substantially matching the description given by the dispatcher; the actual license plate number of the truck was 90BVV2.

As Officer Burris approached the truck, he observed it make a U-turn in the cul-de-sac at the gate entrance to Marshall Creek Park, which had been closed since six o'clock that evening. The officer saw the truck stop in the cul-de-sac for five or six seconds before continuing down the road. Officer Burris followed the truck westbound on Marshall Creek Road and noted that the driver drove at a "slow pace." Officer Burris testified that the speed limit on Marshall Creek Road is thirty miles per hour and that the truck was traveling at approximately fifteen miles per hour. Officer Burris saw the driver brake once or twice and "move to the right and the left of the lanes." After following the

2

truck for approximately 500 feet, Officer Burris activated his emergency lights and initiated the traffic stop. He arrested Schmidt, the driver of the truck, for driving while intoxicated.

Schmidt filed a motion to suppress, complaining that the information provided by the callers and Officer Burris's observations were insufficient to rise to the level of reasonable suspicion to justify the traffic stop. At the suppression hearing, Officer Burris testified that he has been a police officer with the City of Trophy Club since 2004 and is trained to detect intoxication. He testified that he stopped Schmidt for suspicion of driving while intoxicated based on the dispatch call and his observations, including Schmidt's making a U-turn in the cul-de-sac at an entrance to a closed park, driving at a very slow pace, braking multiple times, and moving to the right and left of the lanes. In addition to Officer Burris's testimony, the State played a videotape of the encounter from a video recorder that was mounted in Officer Burris's car. Based on Officer Burris's testimony and a review of the video, the trial court granted Schmidt's motion to suppress. The trial court did not file, and neither party requested, findings of fact and conclusions of law. The State then filed this appeal.

### III. MOTION TO SUPPRESS

In its sole point, the State complains that the trial court improperly granted Schmidt's motion to suppress. Specifically, the State argues that the trial court applied the "as consistent with innocent activity as with criminal activity" standard instead of making a determination under the totality of the circumstances test. The State contends that under the totality of the circumstances test, the evidence, including the dispatch call as well as Officer Burris's training and observations, supports the conclusion that Officer Burris had reasonable suspicion to initiate the investigative detention.

#### A.    Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195

4

S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *Kelly*, 204 S.W.3d at 819; *see Amador*, 221 S.W.3d at 673;

5

*Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

### B. Reasonable Suspicion

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Id*. at 492–93. This is

6

an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id*. at 492. We look only at those facts known to the officer at the inception of the stop. *State v. Griffey*, 241 S.W.3d 700, 704 (Tex. App.—Austin 2007, pet ref'd).

While an anonymous tip will justify the initiation of a police investigation in most situations, it alone will rarely establish the level of suspicion required to justify a detention. *Alabama v. White*, 496 U.S. 325, 329, 110 S. Ct. 2412, 2415–16 (1990); *Davis v. State*, 989 S.W.2d 859, 863–64 (Tex. App.—Austin 1999, pet. ref'd). As the Austin Court of Appeals has explained,

> To justify a police officer's conclusion that a crime has been or is being committed, the officer generally cannot rely alone on a police broadcast of an anonymous phone call to establish probable cause or reasonable suspicion.
>
> . . . .
>
> An officer's prior knowledge, his experience, and his corroboration of the details of the tip may be considered in giving the anonymous tip the weight it deserves. Mere corroboration of details, however, that are easily obtainable at the time the information is provided will not support a finding of probable cause nor furnish the basis for reasonable suspicion.

*Davis*, 989 S.W.2d at 863–64 (citations omitted).

Here, the callers were anonymous at the relevant point in time—when Officer Burris stopped Schmidt. *See Terry*, 392 U.S. at 21, 88 S. Ct. at 1880;

7

*Hawes v. State*, 125 S.W.3d 535, 538 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Stewart v. State*, 22 S.W.3d 646, 650 (Tex. App.—Austin 2000, pet. ref'd). At that time, Officer Burris knew only that two individuals reported a reckless, possibly intoxicated driver of a white Chevy pickup truck, license plate 90BVVZ, turning right onto Marshall Creek Road.[2] He did not know whether dispatch knew or could obtain the callers' identities, and the callers did not follow Schmidt or remain in the area to make sure the officer detained the correct vehicle. *See Swaffar v. State*, 258 S.W.3d 254, 259 (Tex. App.—Fort Worth 2008, pet. filed); *cf. Brother v. State*, 166 S.W.3d 255, 258–59 (Tex. Crim. App. 2005) (noting, in upholding stop, that tipster followed behind the suspect with her emergency lights on, which assisted the officer in identifying the proper vehicle), *cert. denied*, 546 U.S. 1150; *Pipkin v. State*, 114 S.W.3d 649, 654 (Tex. App.—Fort Worth 2003, no pet.) (upholding stop based on tip when tipster made himself accountable for his intervention by providing his

---

[2] Officer Burris testified that two witnesses reported the reckless driving, but on cross-examination, Officer Burris stated that he believed that the two witnesses were husband and wife and that he did not write down in his report whether there were in fact two separate calls. The testimony is somewhat equivocal on this issue as to whether there were two witnesses and two calls or merely two witnesses and only one call on behalf of both witnesses. We must assume that the trial court resolved this conflict in favor of the ruling. *See Wiede*, 214 S.W.3d at 24; *Kelly*, 204 S.W.3d at 818.

contact information to the dispatcher); *State v. Stolte*, 991 S.W.2d 336, 342–43 (Tex. App.—Fort Worth 1999, no pet.) (upholding stop based on tip when the officer knew that he could learn the identity of the tipster who had called in the tip).

Officer Burris corroborated the easily obtainable facts given by the callers—the description of the vehicle and its location. He further witnessed Schmidt make a legal U-turn at the gate entrance to Marshall Creek Park, stop for a few seconds before continuing down Marshall Creek Road, drive fifteen miles per hour below the stated speed limit, brake once or twice, and move to the right and left of the lane. Officer Burris did not witness Schmidt commit any traffic violations.

The video of the encounter, which was played at the supression hearing, reveals that Schmidt's truck drifted slightly to the right of the road and then back left. Overall, the video lacks evidence that Schmidt's truck was weaving across the road, and we must assume that the trial court made this factual determination in favor of the ruling. *See Wiede*, 214 S.W.3d at 24; *Kelly*, 204 S.W.3d at 818. The video clearly shows that Schmidt braked once during the middle of the recording and once right before Officer Burris activated his emergency lights. Schmidt's trial counsel argued that Schmidt used the brakes to navigate the rough, "broken up pavement." Officer Burris agreed on cross-

9

examination that, when carefully looking at the video, the road "was torn up" in front of the truck when Schmidt braked. Officer Burris also agreed that it is prudent in most cases to slow down on rough road. The officer testified that Marshall Creek Road is an undivided, unlit road with potholes, unimproved sides, and no shoulder or fog lines.

Applying the required deferential standard of review to the record before us, the trial court reasonably could have determined that Officer Burris failed to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted his stop of Schmidt. *See, e.g., Stewart*, 22 S.W.3d at 649 (holding that officer's corroboration that two individuals occupied a green Camaro did not give officer basis for crediting informer's accusation that driver was intoxicated); *Davis*, 989 S.W.2d at 864 ("Giving the anonymous tip a common sense reading and considering it in the most favorable light, we do not find any corroboration of details linking appellant . . . to the criminal activity alleged."). The trial court reasonably could have determined that Schmidt's making a legal U-turn at the gated entrance to a closed park, driving at slow speeds, and braking twice on a narrow, unlit "back road" did not constitute activity out of the ordinary related to a crime and did not sufficiently corroborate the anonymous tip. Accordingly, taking all of the factors into consideration, and viewing all the evidence in favor of the trial

10

court's ruling, we hold that the trial court did not err by suppressing the evidence. *See Wiede*, 214 S.W.3d at 24; *Kelly*, 204 S.W.3d at 818. We overrule the State's sole point.

## IV. CONCLUSION

Having overruled the State's sole point, we affirm the trial court's order granting Schmidt's motion to suppress.

SUE WALKER
JUSTICE

PANEL:  CAYCE, C.J.; HOLMAN and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 16, 2008