# NO. 12-09-00453-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JERRY CLINT KIRKPATRICK,*<br>*APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW #1* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *GREGG COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Jerry Clint Kirkpatrick appeals his conviction for driving while intoxicated (DWI). In his sole issue, he contends that the trial court abused its discretion when it denied his motion to suppress evidence. We affirm.

## BACKGROUND

Appellant was charged by information with DWI. He pleaded not guilty and filed a motion to suppress evidence. Only Officer Prew of the Longview Police Department, the arresting officer, testified at the suppression hearing. Officer Prew testified that shortly after 3:00 a.m. on February 8, 2009, a tipster called the Longview Police Department and reported a "harassment" call taking place at the "Waffle Shoppe on Loop 281." The tipster provided her name and stayed at the scene.

Officer Prew testified that he and Officer Smith, also of the Longview Police Department, received the call from dispatch. At this time, the "call sheet" provided further information about the nature of the call and identifying characteristics of the vehicle sought by the officers. Specifically, the call sheet showed that there was a "possible fight in progress or that a fight may be imminent" and that officers should look for a silver Ford F-150 with two to three occupants at

1

the Waffle Shoppe. No license plate number was provided.

Officer Smith arrived first. Upon observing the truck and its occupants' attempt to leave the parking lot, the officer initiated his overhead lights and detained the truck as it left the Waffle Shoppe. Officer Prew arrived moments later. Officer Prew testified that the parking lot was sparsely occupied and no other vehicles in the lot matched the description provided by the tipster. He stated that neither officer observed any traffic violations, nor did they have a warrant for Appellant's arrest.

Officer Prew interviewed Appellant while Officer Smith interviewed the tipster. Officer Prew testified that when Appellant rolled down the window, he detected the odor of alcohol, observed Appellant's "red and glassy bloodshot eyes," and noticed Appellant had "slow, slurred speech." The investigation transformed from a harassment call to a possible DWI stop. Based on the information he had at the time, Officer Prew asked Appellant if he had been drinking and Appellant said "yes." Officer Prew then performed the horizontal gaze nystagmus (HGN) test with Appellant's consent. Appellant presented six of six clues for intoxication. Officer Prew testified that Appellant refused to perform any other field sobriety tests, and based on his observations, he arrested Appellant.

After the suppression hearing, the trial court denied Appellant's motion to suppress. Appellant thereafter pleaded guilty to the offense, and was sentenced to 180 days of confinement, probated for eighteen months.

## MOTION TO SUPPRESS

In his sole issue, Appellant asserts that the tip along with the officer's failure to independently observe Appellant commit any traffic violations provided an insufficient basis for the traffic stop. Therefore, Appellant's argument continues, the trial court erred in denying his motion to suppress the evidence obtained during the stop.

### Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v.*

2

*State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application of law to fact questions that turn on an evaluation of credibility and demeanor. *See Amador*, 221 S.W.3d at 673. But when application of law to fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *See id.* We then review de novo the trial court's legal ruling. *See State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). In our analysis, we view the evidence in the light most favorable to the trial court's ruling. *Id.*

## Investigative Detentions

Law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889.[1] In determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or hunch, but to the specific reasonable inferences that he is entitled to draw from the facts in light of his experience. *Id.*, 392 U.S. at 27, 88 S. Ct. at 1883. An investigative detention is permissible under *Terry* when the detaining officer has specific articulable facts which, taken together with rational inferences from those facts, create a reasonable suspicion that the person detained is, has been, or soon will be engaged in criminal activity. *See Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005).

The existence of reasonable suspicion to support an investigative detention turns on the totality of the circumstances in each case. *See Alabama v. White*, 496 U.S. 325, 328-29, 110 S. Ct. 2412, 2415, 110 L. Ed. 2d 301 (1990). Under this analysis, reasonable suspicion is dependent upon both the content of the information possessed by the officer and its degree of reliability. *Id.*, 496 U.S. at 330, 110 S. Ct. at 2416. Both the quantity and the quality of the information are considered in this analysis. *Id.*

## Tips by Informants

A tip by an unnamed informant of undisclosed reliability, standing alone, will rarely establish the requisite level of suspicion necessary to justify an investigative detention. *White*,

---

[1] Article I, section 9 of the Texas Constitution is coextensive with the Fourth Amendment of the United States Constitution regarding the standard applied to investigative detentions. *Glover v. State*, 870 S.W.2d 198, 199 n.1 (Tex. App.—Fort Worth 1994, pet. ref'd) (citing *Davis v. State*, 829 S.W.2d 218 (Tex. Crim. App. 1992)).

496 U.S. at 329, 110 S. Ct. at 2415. In most instances, there must be some further indicia of reliability from which a police officer may reasonably conclude that the tip is reliable and a detention is justified. *See id.*, 496 U.S. at 329, 110 S. Ct. 2415-16. Where the information has a fairly low degree of reliability, more information will be required to establish the requisite level of suspicion necessary to justify an investigative detention. *Id.*, 496 U.S. at 330, 110 S. Ct. at 2416. Corroboration by the law enforcement officer necessarily goes to the quality, or reliability, of the information. *State v. Sailo*, 910 S.W.2d 184, 188 (Tex. App.—Fort Worth 1995, pet. ref'd). Where the reliability of the information is increased, less corroboration is necessary. *White*, 496 U.S. at 330, 110 S. Ct. at 2416. A detailed description of wrongdoing, along with a statement that the event was observed firsthand, entitles an informant's tip to greater weight than might otherwise be the case. *Illinois v. Gates*, 462 U.S. 213, 234, 103 S. Ct. 2317, 2330, 76 L. Ed. 2d 527 (1983).

Corroboration does not mean that the officer must personally observe the conduct that causes him to reasonably suspect that a crime is being, has been, or is about to be committed. *Brother*, 166 S.W.3d at 259 n.5 (citing *Adams v. Williams*, 407 U.S. 143, 147, 92 S. Ct. 1921, 1924, 32 L. Ed. 2d 612 (1972)). Rather, corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and that an investigative detention is thus justified. *Id.* (citing *White*, 496 U.S. at 330-31). "To require officers who are apprised of detailed facts from citizen-eyewitnesses to observe suspects and wait until additional suspicious acts are committed[ ] would be foolish and contrary to the balance of interests struck in *Terry* and its progeny." *Id.* at 259 (citing *Terry*, 392 U.S. at 29).

**Discussion**

Appellant argues that, without any traffic violation or other reasonable suspicion, the tip provided to Officers Smith and Prew was without sufficient reliability to support his detention.

The tip in the instant case resulted from a phone call to the police. The caller provided her name, a basic description of the complaint (a possible or impending fight), and several pieces of identifying information. Particularly, the caller described a silver Ford F-150 pickup occupied by two or three individuals at the Waffle Shoppe. When Officer Smith arrived, the parking lot was sparsely populated, and only one vehicle, Appellant's truck, matched the description provided by the caller. The caller remained at the scene and was interviewed by Officer Smith while Officer Prew interviewed Appellant. A short amount of time elapsed from the call until the time of the

detention.   Moreover, Officer Prew testified at the suppression hearing that the motorist was not in the employ of the police, entitling the caller's statements to more weight.

Officer Prew also testified at the hearing that on a fight or harassment call, officers will "try and stop all parties involved and figure out what's going on and continue the investigation from there."   Officer Prew stated that he wanted to make sure "that there wasn't going to be a fight or any kind of assault or anything like that."   He implied that the only way to gain an appreciation of the facts was to detain the vehicle matching the description and to speak to the occupants.

Under the totality of the circumstances then, we conclude that the officers possessed the particularized reasonable suspicion necessary to detain Appellant.   *See Sbriglia v. State*, No. 2-09-00294-CR, 2010 WL 2105886, at *3-4 (Tex. App.—Fort Worth May 20, 2010, no pet. h.) (mem. op., not designated for publication); *Ste-Marie v. State*, 32 S.W.3d 446, 449 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (holding officer had reasonable suspicion to detain the appellant to investigate breach of the peace when witness informed officer the appellant had yelled a profanity at her ten-year-old daughter); *Lesco v. State*, No. 01-98-01168-CR, 1999 WL 343425, at *1 (Tex. App.—Houston [1st Dist.] May 27, 1999, no pet.) (not designated for publication) (affirming DWI conviction and holding officers had reasonable suspicion to detain defendant when coffee shop patron reported two white males fighting with customers inside coffee shop and officers saw two white males leaving parking lot in a car as the officers arrived).

Appellant disagrees, however, relying primarily on *Swaffar v. State*, 258 S.W.3d 254, 259 (Tex. App.—Fort Worth 2008, pet. ref'd).   In *Swaffar*, the caller refused to provide her name, did not remain on the scene until police arrived to identify the correct vehicle, did not make herself available to be called to court, and did not identify the manufacturer of the vehicle.   *See id.* Appellant also cites *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).   In *Ford*, the court of criminal appeals held that the officer's vague testimony that the defendant's car followed another vehicle too closely was, without more, insufficient to justify the detention.   *Id.*   The court explained that the testimony, "following too close," by itself, was not sufficiently specific to show that the defendant "actually was, had been, or soon would have been engaged in criminal activity."   *Id.*   In the instant case, the police officers were told by the dispatcher that a fight was imminent or in progress.   As the officers arrived on the scene, they discovered a vehicle matching the description attempting to leave the premises.   The potentially violent nature of the possible assault offense, coupled with the timing of the vehicle's attempted departure from the scene,

allowed the officers to temporarily detain Appellant's truck to ascertain whether such an assault had occurred or was in the process of occurring. Therefore, these cases are distinguishable from the case at hand.

Finally, once he initiated the interview with Appellant, Officer Prew detected the odor of alcohol, observed Appellant's "red and glassy bloodshot eyes," and noticed Appellant's "slow, slurred speech." These observations gave Officer Prew reasonable suspicion to convert the harassment/assault investigation into a DWI investigation. *See Sieffert v. State*, 290 S.W.3d 478, 483 (Tex. App.—Amarillo 2009, no pet.) (citing *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997)); *see also State v. Priddy*, __S.W.3d__, 2010 WL 1999520, at *5 (Tex. App.—Fort Worth May 20, 2010, no pet. h.) (not yet released for publication).

The trial court did not abuse its discretion in denying Appellant's motion to suppress. We overrule Appellant's sole issue.

## DISPOSITION

We *affirm* the judgment of the trial court.

**SAM GRIFFITH**
Justice

Opinion delivered July 21, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

6