NO.
12-09-00453-CR

      

                         IN THE COURT OF
APPEALS         

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER, TEXAS

JERRY CLINT KIRKPATRICK,                      '           APPEAL FROM THE 

APPELLANT

 

V.                                            '         COUNTY COURT AT LAW #1

 

THE STATE OF TEXAS,

APPELLEE                                  
'         GREGG COUNTY, TEXAS

                                                        
                                         

                                                      MEMORANDUM
OPINION

Jerry
Clint Kirkpatrick appeals his conviction for driving while intoxicated (DWI). 
In his sole issue, he contends that the trial court abused its discretion when
it denied his motion to suppress evidence.  We affirm.

 

Background

Appellant
was charged by information with DWI. He pleaded not guilty and filed a motion
to suppress evidence.  Only Officer Prew of the Longview Police Department, the
arresting officer, testified at the suppression hearing.  Officer Prew
testified that shortly after 3:00 a.m. on February 8, 2009, a tipster called
the Longview Police Department and reported a “harassment” call taking place at
the “Waffle Shoppe on Loop 281.”  The tipster provided her name and stayed at
the scene.  

Officer
Prew testified that he and Officer Smith, also of the Longview Police
Department, received the call from dispatch.  At this time, the “call sheet”
provided further information about the nature of the call and identifying
characteristics of the vehicle sought by the officers.  Specifically, the call
sheet showed that there was a “possible fight in progress or that a fight may
be imminent” and that officers should look for a silver Ford F-150 with two to
three occupants at the Waffle Shoppe.  No license plate number was provided.  

Officer
Smith arrived first.  Upon observing the truck and its occupants’ attempt to
leave the parking lot, the officer initiated his overhead lights and detained
the truck as it left the Waffle Shoppe.  Officer Prew arrived moments later. 
Officer Prew testified that the parking lot was sparsely occupied and no other
vehicles in the lot matched the description provided by the tipster.  He stated
that neither officer observed any traffic violations, nor did they have a
warrant for Appellant’s arrest.

Officer
Prew interviewed Appellant while Officer Smith interviewed the tipster. 
Officer Prew testified that when Appellant rolled down the window, he detected
the odor of alcohol, observed Appellant’s “red and glassy bloodshot eyes,” and
noticed Appellant had “slow, slurred speech.”  The investigation transformed
from a harassment call to a possible DWI stop.  Based on the information he had
at the time, Officer Prew asked Appellant if he had been drinking and Appellant
said “yes.”  Officer Prew then performed the horizontal gaze nystagmus (HGN)
test with Appellant’s consent.  Appellant presented six of six clues for
intoxication.  Officer Prew testified that Appellant refused to perform any
other field sobriety tests, and based on his observations, he arrested
Appellant. 

After
the suppression hearing, the trial court denied Appellant’s motion to
suppress.  Appellant thereafter pleaded guilty to the offense, and was
sentenced to 180 days of confinement, probated for eighteen months. 

 

Motion
to Suppress

In
his sole issue, Appellant asserts that the tip along with the officer’s failure
to independently observe Appellant commit any traffic violations provided an
insufficient basis for the traffic stop.  Therefore, Appellant’s argument
continues, the trial court erred in denying his motion to suppress the evidence
obtained during the stop. 

Standard
of Review 

We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.  Amador v. State, 221 S.W.3d 666,
673 (Tex. Crim. App. 2007).  In reviewing the trial court’s decision, we do not
engage in our own factual review.  See Romero v. State, 800
S.W.2d 539, 543 (Tex. Crim. App. 1990).  The trial judge is the sole trier of
fact and judge of the credibility of the witnesses and the weight to be given
their testimony.  Wiede v. State, 214 S.W.3d 17, 24-25 (Tex.
Crim. App. 2007).  Therefore, we give almost total deference to the trial
court’s rulings on (1) questions of historical fact, even if the trial court’s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application of law to fact questions that turn on an
evaluation of credibility and demeanor.  See Amador, 221 S.W.3d
at 673.  But when application of law to fact questions do not turn on the
credibility and demeanor of the witnesses, we review the trial court’s rulings
on those questions de novo.  See id.  We then review de novo the
trial court’s legal ruling.  See State v. Kelly, 204 S.W.3d 808,
818 (Tex. Crim. App. 2006).  In our analysis, we view the evidence in the light
most favorable to the trial court’s ruling.  Id.  

Investigative
Detentions

Law
enforcement officers may stop and briefly detain persons suspected of criminal
activity on less information than is constitutionally required for probable
cause to arrest.  Terry v. Ohio, 392 U.S. 1, 22, 88 S. Ct.
1868, 1880, 20 L. Ed. 2d 889.[1]
 In determining whether the
officer acted reasonably in such circumstances, due weight must be given, not
to his inchoate and unparticularized suspicion or hunch, but to the specific
reasonable inferences that he is entitled to draw from the facts in light of
his experience.  Id., 392 U.S. at 27, 88 S. Ct. at 1883.  An
investigative detention is permissible under Terry when the
detaining officer has specific articulable facts which, taken together with
rational inferences from those facts, create a reasonable suspicion that the
person detained is, has been, or soon will be engaged in criminal activity.  See
Brother v. State, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005).

The
existence of reasonable suspicion to support an investigative detention turns
on the totality of the circumstances in each case.  See Alabama v. White,
496 U.S. 325, 328-29, 110 S. Ct. 2412, 2415, 110 L. Ed. 2d 301 (1990).  Under
this analysis, reasonable suspicion is dependent upon both the content of the
information possessed by the officer and its degree of reliability.  Id.,
496 U.S. at 330, 110 S. Ct. at 2416. Both the quantity and the quality of the
information are considered in this analysis.  Id.

Tips
by Informants

A
tip by an unnamed informant of undisclosed reliability, standing alone, will
rarely establish the requisite level of suspicion necessary to justify an
investigative detention.  White, 496 U.S. at 329, 110 S. Ct. at
2415.  In most instances, there must be some further indicia of reliability
from which a police officer may reasonably conclude that the tip is reliable
and a detention is justified.  See id., 496 U.S. at 329, 110 S.
Ct. 2415-16.  Where the information has a fairly low degree of reliability,
more information will be required to establish the requisite level of suspicion
necessary to justify an investigative detention.  Id., 496 U.S.
at 330, 110 S. Ct. at 2416.  Corroboration by the law enforcement officer
necessarily goes to the quality, or reliability, of the information.  State
v. Sailo, 910 S.W.2d 184, 188 (Tex. App.—Fort Worth 1995, pet. ref'd). 
Where the reliability of the information is increased, less corroboration is
necessary.  White, 496 U.S. at 330, 110 S. Ct. at 2416.  A
detailed description of wrongdoing, along with a statement that the event was
observed firsthand, entitles an informant’s tip to greater weight than might
otherwise be the case.  Illinois v. Gates, 462 U.S. 213, 234, 103
S. Ct. 2317, 2330, 76 L. Ed. 2d 527 (1983).

Corroboration
does not mean that the officer must personally observe the conduct that causes
him to reasonably suspect that a crime is being, has been, or is about to be
committed.  Brother, 166 S.W.3d at 259 n.5 (citing Adams v.
Williams, 407 U.S. 143, 147, 92 S. Ct. 1921, 1924, 32 L. Ed. 2d 612
(1972)).  Rather, corroboration refers to whether the police officer, in light
of the circumstances, confirms enough facts to reasonably conclude that the
information given to him is reliable and that an investigative detention is
thus justified.  Id. (citing White, 496 U.S. at
330-31).  “To require officers who are apprised of detailed facts from
citizen-eyewitnesses to observe suspects and wait until additional suspicious
acts are committed[ ] would be foolish and contrary to the balance of interests
struck in Terry and its progeny.”  Id. at 259
(citing Terry, 392 U.S. at 29).  

Discussion

Appellant
argues that, without any traffic violation or other reasonable suspicion, the
tip provided to Officers Smith and Prew was without sufficient reliability to
support his detention. 

The
tip in the instant case resulted from a phone call to the police.  The caller
provided her name, a basic description of the complaint (a possible or
impending fight), and several pieces of identifying information.  Particularly,
the caller described a silver Ford F-150 pickup occupied by two or three
individuals at the Waffle Shoppe.  When Officer Smith arrived, the parking lot
was sparsely populated, and only one vehicle, Appellant’s truck, matched the
description provided by the caller.  The caller remained at the scene and was
interviewed by Officer Smith while Officer Prew interviewed Appellant.  A short
amount of time elapsed from the call until the time of the detention. 
Moreover, Officer Prew testified at the suppression hearing that the motorist
was not in the employ of the police, entitling the caller’s statements to more
weight.

Officer
Prew also testified at the hearing that on a fight or harassment call, officers
will “try and stop all parties involved and figure out what’s going on and
continue the investigation from there.”  Officer Prew stated that he wanted to
make sure “that there wasn’t going to be a fight or any kind of assault or
anything like that.”  He implied that the only way to gain an appreciation of
the facts was to detain the vehicle matching the description and to speak to
the occupants. 

Under
the totality of the circumstances then, we conclude that the officers possessed
the particularized reasonable suspicion necessary to detain Appellant.  See Sbriglia
v. State, No. 2-09-00294-CR, 2010 WL 2105886, at *3-4 (Tex. App.—Fort
Worth May 20, 2010, no pet. h.) (mem. op., not designated for publication); Ste-Marie
v. State, 32 S.W.3d 446, 449 (Tex. App.—Houston [14th Dist.] 2000, no
pet.) (holding officer had reasonable suspicion to detain the appellant to
investigate breach of the peace when witness informed officer the appellant had
yelled a profanity at her ten-year-old daughter); Lesco v. State,
No. 01-98-01168-CR, 1999 WL 343425, at *1 (Tex. App.—Houston [1st Dist.] May
27, 1999, no pet.) (not designated for publication) (affirming DWI conviction
and holding officers had reasonable suspicion to detain defendant when coffee
shop patron reported two white males fighting with customers inside coffee shop
and officers saw two white males leaving parking lot in a car as the officers
arrived).

Appellant
disagrees, however, relying primarily on Swaffar v. State, 258
S.W.3d 254, 259 (Tex. App.—Fort Worth 2008, pet. ref’d).  In Swaffar,
the caller refused to provide her name, did not remain on the scene until
police arrived to identify the correct vehicle, did not make herself available
to be called to court, and did not identify the manufacturer of the vehicle.  See
id.  Appellant also cites Ford v. State, 158 S.W.3d
488, 493 (Tex. Crim. App. 2005).  In Ford, the court of criminal
appeals held that the officer’s vague testimony that the defendant’s car
followed another vehicle too closely was, without more, insufficient to justify
the detention.  Id.  The court explained that the
testimony, “following too close,” by itself, was not sufficiently specific to
show that the defendant “actually was, had been, or soon would have been
engaged in criminal activity.”  Id.  In the instant case,
the police officers were told by the dispatcher that a fight was imminent or in
progress.  As the officers arrived on the scene, they discovered a vehicle
matching the description attempting to leave the premises.  The potentially
violent nature of the possible assault offense, coupled with the timing of the
vehicle’s attempted departure from the scene, allowed the officers to
temporarily detain Appellant’s truck to ascertain whether such an assault had
occurred or was in the process of occurring.  Therefore, these cases are
distinguishable from the case at hand.

Finally,
once he initiated the interview with Appellant, Officer Prew detected the odor of
alcohol, observed Appellant’s “red and glassy bloodshot eyes,” and noticed
Appellant’s “slow, slurred speech.”  These observations gave Officer Prew
reasonable suspicion to convert the harassment/assault investigation into a DWI
investigation.  See Sieffert v. State, 290 S.W.3d 478, 483 (Tex.
App.—Amarillo 2009, no pet.) (citing Davis v. State, 947 S.W.2d
240, 244 (Tex. Crim. App. 1997)); see also State v. Priddy, __S.W.3d__,
2010 WL 1999520, at *5 (Tex. App.—Fort Worth May 20, 2010, no pet. h.) (not yet
released for publication).

The
trial court did not abuse its discretion in denying Appellant’s motion to
suppress.  We overrule Appellant’s sole issue. 

 

Disposition

            We
affirm the judgment of the trial court.

 

                                                                                                Sam Griffith

                                                                                                        
Justice

 

 

Opinion delivered July 21, 2010.

Panel consisted
of Worthen, C.J., Griffith, J., and Hoyle, J.









                [1] Article I,
section 9 of the Texas Constitution is coextensive with the Fourth Amendment of
the United States Constitution regarding the standard applied to investigative
detentions.  Glover v. State, 870 S.W.2d 198, 199 n.1 (Tex. App.—Fort
Worth 1994, pet. ref'd) (citing Davis v. State, 829 S.W.2d 218
(Tex. Crim. App. 1992)).