02-09-437-CR
















 

 

 

COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00437-CR

 

 


 
 
 JOHN MURRAY BENNETT
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 THE STATE OF TEXAS
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM THE 396TH
 DISTRICT COURT OF TARRANT
COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

I. 
Introduction

          In a sole point, Appellant John Murray
Bennett appeals from the trial court’s denial of his motion to suppress.  We affirm.

II.  Procedural History

          Bennett
was charged with DWI-felony repetition.  The
trial court carried Bennett’s motion to suppress until trial and held a
suppression hearing during Azle Police Officer Rusty
Wingate’s testimony, discussed below.  Following
the hearing, the trial court denied the motion and proceeded with trial.  The jury convicted Bennett of felony DWI, the
trial court assessed five years’ confinement as punishment, and this appeal
followed.

III.  Discussion

          Bennett
argues that the trial court erred by finding that his detention was properly
supported by the evidence and by denying his motion to suppress.

A.  
Community
Caretaking Function

The Fourth
Amendment protects against unreasonable searches and seizures by government
officials.  U.S. Const. amend. IV; Wiede v. State, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007).  An officer’s community caretaking function is
a narrowly applied exception to the Fourth Amendment’s warrant
requirement.  Wright v. State, 7 S.W.3d 148, 151–52
(Tex. Crim. App. 1999).  Under the
community caretaking exception, an officer may stop and assist an individual
whom a reasonable person would believe is in need of help given the totality of
the circumstances.  Id.  However, in order to
invoke his community caretaking function, the officer’s primary motive must be
concern for the individual’s well-being. Corbin v. State, 85 S.W.3d 272, 277 (Tex. Crim. App. 2002).

Determining
whether the officer properly invoked his community caretaking function is a
two-step process.  Swaffer v. State, 258 S.W.3d 254, 260 (Tex. App.—Fort Worth 2008, pet. ref’d) (citing Corbin,
85 S.W.3d at 277).  We must first determine
whether the officer was primarily motivated by a community caretaking purpose
and then whether the officer’s belief that his assistance was required was
reasonable.  Swaffer, 258 S.W.3d at 260–61. 
Then we consider these non-exclusive factors:  (1) the nature and level of distress exhibited
by the individual; (2) the individual’s location; (3) whether the individual
was alone or had other access to assistance besides that of the officer; and
(4) to what extent the individual, if not assisted, presented a danger to himself
or others.  Wright, 7 S.W.3d at 151–52.  The first factor is entitled to the greatest
weight.  Corbin, 85 S.W.3d at
277.

B.  
Analysis

During the
suppression hearing, Officer Wingate testified that on the night of November 5,
2006, during his conversation with two pedestrians who had been walking in the
street “right down a hill from where the accident occurred . . . a vehicle . .
. [a] guy stops me and says, hey, a guy wrecked out on his motorcycle, you need
to go check on him.”  He stated that he
stopped Bennett because he thought an accident had occurred and that the
parties involved were in distress and that “[i]f
anyone had come around that blind corner where they[[2]] were
stalled out there, it would have been easy for them to have been r[u]n over.”  At the conclusion of the suppression hearing,
the trial court overruled Bennett’s objection.

During
trial, Officer Wingate added that the streets were wet and slippery that night and that he learned of the motorcycle accident,
which was about a block away from his location, around 8:00 p.m.  The DVD from his patrol unit’s dashboard
camera, which was admitted in evidence and published to the jury during his testimony,
shows that the roads were wet, that it was very dark, that Bennett pulled into
a parking lot shortly after restarting his motorcycle, and that a highway road sign
warns of curves in the road just beyond the parking lot entrance.

The trial court reasonably could have found that
Officer Wingate was primarily motivated by his community caretaking function
because Officer Wingate testified that he stopped Bennett and his passenger
because they appeared to be in distress and that he “was unsure if anyone was
hurt or not.” See Corbin, 85 S.W.3d at 277; Chilman v. State,
22 S.W.3d 50, 55 (Tex. App.—Houston [14th Dist.] 2000, pet ref’d).

Furthermore, the trial court could have reasonably
found that the Wright factors support
a finding that Officer Wingate acted reasonably in stopping Bennett to
determine if he needed help because Officer Wingate could have concluded that
Bennett did not have access to assistance; Bennett’s passenger was also involved
in the accident; the accident occurred at night; and, immediately after the
accident, Bennett pulled into an empty parking lot.  We conclude that Officer Wingate’s exercise of his community
caretaking function was reasonable; therefore, the trial court did not err by
denying Bennett’s motion to suppress.  We
overrule Bennett’s sole point.

IV.  Conclusion

          Having overruled Bennett’s sole point,
we affirm the trial court’s judgment.

 

 

                                                                             
 
 
 
 
 
 
 
 BOB MCCOY

                                                                             
 
 
 JUSTICE

 

PANEL:  
 
 
 
 
 
 
 LIVINGSTON, C.J.; 
 
 
 
 
 
 DAUPHINOT and 
 
 
 
 
 
 MCCOY, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  January
27, 2011











[1]See Tex. R. App. P. 47.4.





[2]There were two
people on the motorcycle.  The parties do
not dispute that Bennett was the driver.